### In re OXFORD HEALTH PLANS, INC. SECURITIES LITIGATION

#### No. MDL CIV. 1222(CLB).

United States District Court, S.D. New York.

Feb. 9, 2001.

Jay W. Eisenhofer, Grant & Eisenhofer, P.A., Wilmington, DE, Patricia M. Hynes, Steven G. Schulman, Milberg Weiss Bershad Hynes & Lerach, New York City, Martin D. Chitwood, Christi C. Mobley, John O'Shea Sullivan, Chitwood & Harley, Atlanta, GA, for Plaintiffs.

Stephen Lowey, Richard B. Dannenberg, Lowey Dannenberg Bemporad & Selinger, PC, White Plains, NY, Liason Counsel for Plaintiffs.

Peter J. Beshar, Gibson, Dunn & Crutcher, LLP, New York City, for Steven Wiggins.

Kenneth Conboy, Maureen C. Shay, Latham & Watkins, New York City, for Robert Milligan.

Robert J. Giuffra, Jr., Sullivan & Cromwell, New York City, for Oxford, and officer defendants other than Wiggins, Cassidy and Milligan.

Barry R. Berke, Kramer, Levin, Naftalis & Frankel, New York City, for Andrew Cassidy.

Willkie Farr & Gallagher, New York City, for Peat Marwick.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

By letter dated March 8, 2000, Plaintiffs Hurley and Sabbia notified the Court through counsel that they were willing to serve as class representatives in this securities class action. Defendants' Opposition papers with regard to the appointment of Messrs. Hurley and Sabbia and Plaintiffs' Reply were filed on September 25, 2000. Defendants' "Response to Reply" was filed on October 16, 2000 and Plaintiffs' "Sur-Reply" was filed on October 27, 2000.

*Background*

The Court assumes the reader's familiarity with its prior decisions in this litigation, and all prior proceedings.

On October 31, 1997, Plaintiff Howard Vogel Retirement Plan (the "Vogel Plan") filed a class action complaint on behalf of Oxford common stock purchasers against Oxford Health Plans, Inc. ("Oxford") and certain of its directors and officers for violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "1934 Act"). The class period was defined initially as November 6, 1996 through October 27, 1997. On December 17, 1997, the Vogel Plan and certain other plaintiffs (the "Vogel Group") filed an Amended Complaint also on behalf of Oxford common stockholders alleging further violations of the 1934 Act and extending the Class Period through December 9, 1997. Messrs. Hurley and Sabbia were not named as plaintiffs in either the Complaint or the Amended Complaint.

On December 23, 1997, the Vogel Group filed a motion for appointment as lead plaintiff. On December 26, 1997, the Vogel Group filed a Joinder of Three Additional Class Members in its motion for appointment as lead plaintiff. The three additional class members included Messrs. Hurley and Sabbia who attached certifications of their trading in Oxford stock during the Class Period. On May 14, 1998, the Vogel Group moved for leave to supplement its prior lead plaintiff motion and filed the Affidavit of Patricia M. Hynes (the "Hynes Affidavit") in support thereof. The Hynes Affidavit included a computation of the losses of each member of the Vogel Group for that member's transactions in Oxford common stock for the period November 6, 1996 through December 9, 1997. The losses stated for Messrs. Hurley and Sabbia calculated based on the initial Class Period were $897,080.43 and $2,731,269, respectively. In the Hynes Affidavit, the losses for Messrs. Hurley and Sabbia were updated to reflect the extended class period and were stated to be $3,409,423.11 and $2,014,520, respectively.

On June 11, 1998, the Court held a hearing on the lead plaintiff motions. By its Memorandum & Order dated July 15, 1998, the Court appointed as lead plaintiffs the following three groups of plaintiffs: (1) ColPERA; (2) five mutual funds under the control of PBHG Funds, Inc. ("PBHG"); and (3) three individuals—Gary Weber, Daniel Hurley and Michael Sabbia.

On October 2, 1998, Plaintiffs filed their Consolidated and Amended Class Action Complaint (the "Complaint"). The "Class Period" in the Complaint was defined as November 6, 1996 through December 9, 1997. The "Class" was defined as purchasers of Oxford securities during the Class Period. The class definition was amended to include Oxford common stock purchasers and those who bought Oxford call options or sold Oxford put options. On November 16, 1998, the Court approved by order a Stipulation Amending Class Definition in Consolidated and Amended Class Action Complaint to reflect these changes.

On August 25, 1999, Plaintiffs filed their motion for class certification. Plaintiffs proposed lead plaintiffs ColPERA, the five PBHG funds and Gary Weber, and Al Tawil, also a named plaintiff, as class representatives pursuant to Rule 23. On November 18, 1999, the Court granted a motion brought by four of the five PBHG funds to withdraw as proposed class representatives. On December 8, 1999, Mr. Weber was withdrawn as a lead plaintiff and proposed class representative.

By a decision dated February 28, 2000, reported as *In re Oxford Health Plans, Inc. Securities Litigation,* 191 F.R.D. 369 (S.D.N.Y.2000), this Court determined to certify the Class to consists of all persons or entities who, during the Class Period, purchased Oxford common stock, or purchased Oxford call options or sold Oxford put options (and were damaged thereby). The Court determined to certify ColPERA, the one remaining PBHG fund and Al Tawil as class representatives. In addition, the Court indicated that because the Vogel Group's initial proposed class representative had withdrawn, the Group could have 10 days to propose other members of the Group as class representatives. As stated above, by letter dated March 8, 2000, Messrs. Hurley and Sabbia notified the Court through their counsel that they were willing to serve as such class representatives.

Since 1995, Mr. Hurley has worked as an independent contractor for Letco Trading L.P. ("Letco"). Mr. Hurley trades for his own account and, during the Class Period, he shared profits with Letco and two individuals. Mr. Hurley directed the trading in the account and was entitled to the majority of the profits from the account during the Class Period. Beginning on March 10, 2000, in response to Defendants' document requests served on them by Defendants, Messrs. Hurley and Sabbia produced documents regarding their trading in Oxford common stock and options. By letter dated March 14, 2000, Plaintiffs' counsel advised Defendants for the first time that in re-checking Plaintiffs' common stock losses, it was determined that certain adjustments to Plaintiffs' losses were necessary. It was determined that the losses for Messrs. Hurley and Sabbia were $917,000 and $2.3 million, respectively. The downward adjustment to Mr. Hurley's losses was explained as resulting from counsel's inadvertent misreading of Mr. Hurley's position at the start of the Class Period as a long position when it was in fact a short position. The upward adjustment in Mr. Sabbia's losses was explained as resulting from an omission of 10,100 shares from counsel's prior calculation.

*Standing*

Rule 10(b) of the 1934 Act limits nonderivative private civil remedies for violations of the 1934 Act to "purchasers or sellers of securities." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 735, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Section 3(a)(13) of the 1934 Act provides that "the terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire." 15 U.S.C. § 78c(a)(13). Furthermore, section 3(a)(14) of the 1934 Act provides that "the terms 'sale' and 'sell' each include any contract to sell or otherwise dispose of." 15 U.S.C. § 78c(a)(14). It has been held that

holders of puts, calls, options, and other contractual rights or duties to purchase or

sell securities have been recognized as "purchasers" or "sellers" of securities for purposes of Rule 10b–5, not because of a judicial conclusion that they were similarly situated to "purchasers" or "sellers," but because the definitional provisions of the 1934 Act themselves grant them such a status.

*Blue Chip Stamps,* 421 U.S. at 749, 95 S.Ct. 1917.

■ Defendants contend that Mr. Hurley does not have standing to maintain this action and therefore may not serve as a class representative. Defendants contention is unfounded. Mr. Hurley was the beneficial owner of a large quantity of Oxford shares during the Class Period and was entitled to a large share of the profits generated therefrom. Furthermore, it is undisputed that Mr. Hurley directly made the investment decisions to purchase and sell Oxford common stock during the Class Period. It has been established that a trust beneficiary may sue under Rule 10b–5. *See Kirshner v. United States,* 603 F.2d 234, 239 (2d Cir. 1978). The beneficiary is the one "who immediately stood to gain or lose by the sale." *Haber v. Kobrin,* 1983 WL 1332, \*2 (S.D.N.Y.)(quoting *Klamberg v. Roth,* 425 F.Supp. 440, 442–43 (S.D.N.Y.1976)). The Court concludes that as a beneficial owner of a substantial amount of Oxford stock, Mr. Hurley has standing to be a plaintiff and a class representative in this action.

■ The parties also dispute the proper methodology to be used to calculate Plaintiffs' losses for purposes of selecting class representatives. This technical dispute, however, is regarded as of no moment, and should not be used to prevent viable class representatives from being approved. This Court concludes that a resolution of this dispute is not critical to the selection and approval of the proposed class representatives. As this Court previously has held, "there is no requirement [either in the PSLRA or] in Rule 23 concerning the amount of loss either in gross or compared with the losses of others, necessary to qualify as a class representative." *In re Oxford Health Plans, Inc.,* 191 F.R.D. 369, 375 (S.D.N.Y.2000).

*Typicality and Adequacy*

■ The proposed class representatives are to be reviewed for typicality and adequacy in accordance with the standards of Rule 23 of the Federal Rules of Civil Procedure. Defendants contend that Messrs. Hurley and Sabbia are not suitable class representatives because they are or have been "market makers" in Oxford options and therefore do not satisfy the typicality requirement of Rule 23. Typicality, however, does not require that the situations of the named representatives and the class members be identical. *See Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 200 (S.D.N.Y.1992). In fact, the named representatives only need to be adequate and do not need to be the best or most typical of all possible representatives. Becoming a class representative entails assuming fiduciary obligations which may well turn out to be burdensome and time consuming. Typicality requires that a class representative "have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Daniels v. Amerco,* 1983–1 Trade Cas. P 65,274, 1983 WL 1794 (S.D.N.Y.1983); *see also In re NASDAQ,* 169 F.R.D. 493, 510. The Court is to assess whether Plaintiffs' claims arise from the same event or course of conduct which in turn has given rise to the claims of other class members based upon the same legal theory. *See Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y.1981); *Mersay v. First Republic Corp. of America,* 43 F.R.D. 465, 468 (S.D.N.Y.1968). The proper inquiry, therefore, is

whether the other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct ... Thus, a difference in the amount of damages, date, size, or manner of purchase will not render the claim atypical in most securities actions.

*Dura–Bilt,* 89 F.R.D. at 99.

In this case, the focus for purposes of the typicality analysis is whether the same or

similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct to "misrepresent and conceal from the investing public material facts regarding ... Oxford's business and financial condition." Plaintiffs in this case have alleged "a common nucleus of operative facts applicable to the class as a whole." *Mersay*, 43 F.R.D. at 468. It cannot be said that Hurley and Sabbia's claims are antagonistic to or in conflict with those of their fellow class members. As this Court has previously explained, "where the public market of a quoted security is polluted by false information, or where price, supply and demand are distorted as a result of misleading omissions, all types of investors are injured." *Leist v. Tamco Enterprises, Inc.*, 1982 U.S. Dist. LEXIS 17389, No. 80 Civ. 4439(CLB). Included among those injured are so called market makers. As the Supreme Court has stated in quoting this Court, "it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?" *Basic Incorporated v. Levinson*, 485 U.S. 224, 245, 108 S.Ct. 978, 99 L.Ed.2d 194 (Blackmun, J.1988)(quoting *Schlanger v. Four–Phase Systems Inc.*, 555 F.Supp. 535, 538 (S.D.N.Y. 1982)).[1]

■ Defendants deposed Mr. Sabbia on April 11, 2000 and Mr. Hurley on April 13, 2000. The deposition testimony shows that Mr. Sabbia and Mr. Hurley are both well qualified to serve and will be adequate representatives of the Class. For example, both testified that they: kept abreast of Oxford news/public statements, including earnings announcements on Reuters and Dow Jones; relied on the integrity of the market of their trading of Oxford securities and assumed that the market price of Oxford shares reflected all material information about the Company; are actively involved in this litigation; speak regularly with their attorneys; reviewed the complaint and demonstrated their familiarity with the allegations contained therein, including the dates of the Class Period; are willing to serve as class representatives, understand their duties to absent Class members, and are willing to attend the trial.

*Private Securities Litigation Reform Act (PSLRA)*

■ Defendants argue that Messrs. Hurley and Sabbia violated the requirements of the PSLRA by failing to disclose correctly in their initial certifications pertaining to the separate issue of lead plaintiff, all of their transactions in Oxford options during the Class Period. The PSLRA provides that a certification must set forth "all of the transactions of the plaintiff in the security *that is the subject of the complaint* during the class period specified in the complaint." 15 U.S.C. § 78u–4(a)(2)(A)(iv) (emphasis added). The complaint of the Vogel Group to which the Hurley and Sabbia certifications were related, asserted claims on behalf of purchasers of Oxford common stock only, and was silent with respect to claims on behalf of individuals who bought or sold Oxford options. The fact that the Court subsequently defined the Class to include both Oxford common stock purchasers and those who bought Oxford call options or sold Oxford put options does not make the certifications of Messrs. Hurley and Sabbia misleading after the fact. There is no evidence in the record that Messrs. Hurley or Sabbia or anybody else for that matter have engaged in any activity intended to mislead this Court.

■ Defendants contend further that the lead plaintiff selection process should be reopened at this late date based on their assertion that Messrs. Hurley and Sabbia did not

1. Because this proposition is founded in common sense and folk wisdom, it has been cited many times, and gleefully. *See, e.g., Joseph v. Q.T. Wiles*, 223 F.3d 1155, 1165, n. 4 (10th Cir.2000); *Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 282 n. 35 (S.D.N.Y.1984 Goettel, J.); *Tolan v. Computervision Corporation*, 696 F.Supp. 771, 776 (D.Mass.1988); *Dingler v. T.J. Raney & Sons, Inc.*, 708 F.Supp. 1044, 1047 (W.D.Ark.1989); *Hemming v. Alfin Fragrances, Inc.*, 1990 WL 106997, (S.D.N.Y., Keenan J.); *Masnik v. Bolar Pharmaceutical Co. Inc.*, 1991 WL 138331 (E.D.Pa.1991); *South Carolina National Bank v. Stone*, 139 F.R.D. 325, 332 (D.S.C.1991); *In re American Continental Corporation/Lincoln Savings and Loan Securities Litigation*, 140 F.R.D. 425, 433 (D.Ariz.1992); *Feldman v. Motorola, Inc.*, 1992 WL 137163 (N.D.Ill.); and, *Waters v. International Precious Metals Corporation*, 172 F.R.D. 479, 489 (S.D.Fla.1996).

comply with the certification requirements of the PSLRA. As discussed above this Court concludes that Messrs. Hurley and Sabbia did comply with the certification requirements of the statute and disclosed those transactions in the security which was the subject of the complaint at the time the certification was submitted. While the PSLRA does have a statutory presumption with respect to the amount of loss involved for selecting *lead plaintiffs*, neither the statute nor Rule 23 contains the same presumption for selection of *class representatives*. The PSLRA does not contemplate that every securities fraud case will be maintained as a class action. A lead plaintiff is not synonymous with a class representative, and in the ordinary course of litigation the class representative will not appear on the scene until long after the lead plaintiff. No lead plaintiff is compelled to serve as a class representative. While the PSLRA defines the qualifications and selection process for lead plaintiff, the class representative is selected not pursuant to the PSLRA, but pursuant to Rule 23. The Court declines at this time to reopen the lead plaintiff process. As the Court has stated, "the class representative is going to control the case. He is the Rule 23 fiduciary, not the lead plaintiffs." *In re Oxford*, 191 F.R.D. at 378.

*Collateral Attack*

Defendants have expressed concern about the possibility of a collateral attack on a possible future court approved settlement of this case. Currently, there is no settlement proposal before the Court, and no indication from counsel that such a settlement proposal is forthcoming. Of course, any settlement proposed tentatively approved by the learned counsel involved on both sides in this litigation would not be approved by the Court without considering the opinion of *all* class representatives and giving adequate notice to the class members, followed by an evidentiary hearing to determine reasonableness and to provide assurance that any such settlement was negotiated in good faith and at arms length in a manner entirely free from conflict or collusion.

Like all interlocutory orders in civil litigation, these designations are subject to modification by this Court for good cause at any time prior to final judgment. *See In re United States of America Petitioner in re Agent Orange Product Liability Litigation*, 733 F.2d 10, 13 (2d Cir.1984). Under the circumstances present in this case, Defendants' expressed concerns about possible collateral attack on a possible future settlement in this case are so unwarranted and unfounded as to amount to crocodile tears.

The renewed application of North River Trading Company to be designated as a class representative is denied without prejudice.

*Conclusion*

Based on the foregoing, the Court hereby appoints Messrs. Hurley and Sabbia as class representatives in this action to serve along with ColPERA, the remaining PBHG fund and Al Tawil. Counsel shall submit the order directed to be submitted by the Court's February 28, 2000, decision to be settled, as a single document on five (5) days notice or waiver of notice. The Order must contain a provision for notice and an opportunity for those whose rights may be affected to opt out of the Plaintiff class.

SO ORDERED.