In re LIVENT, INC. NOTEHOLDERS
SECURITIES LITIGATION.

No. 98 Civ. 7161(VM).

United States District Court,
S.D. New York.

Nov. 15, 2002.

Stanley M. Grossman, Patrick V. Dahlstrom, Pomerantz, Haudek, Block, Grossman & Gross LLP, New York City, Lionel Z. Glancy, Glancy & Binkow LLP, Peter A. Binkow, Donald R. Wager, Los Angeles, CA, for plaintiffs.

Ronald A. Nimkoff, Harvey B. Silikovitz, Schechter & Nimkoff, LLP, New York City, Harvey L. Pitt, Fried, Frank, Harris, Shriver & Jacobson, New York City, Lee S. Richards, Richards, Spears, Kibbe & Orbe, New York City, John T. Behrendt, Peter Justus Beshar, Aric Hugo Wu, Lee Gordon Dunst, Gibson, Dunn and Crutcher, LLP, New York City, Leon P. Gold, Leslie J. Harris, Pros-

kauer, Rose, LLP, New York City, William H. Gussman, Jr., Howard O. Godnick, Stacy P. Aronowitz, Schulte, Roth & Zabel, New York City, for defendants.

## DECISION AND ORDER

MARRERO, District Judge.

In a Decision and Order dated November 6, 2002, this Court denied in part the motion for class certification filed by Lead Plaintiffs Dorian King and Diane King (the "Kings"), finding that individual and atypical issues of reliance would predominate over claims asserted pursuant to Section 10(b) of the Securities Exchange Act of 1934 (herein "§ 10(b)"), 15 U.S.C. § 78j(b). In that Decision, the Court did not address the Kings' motion for class certification as it relates to the claims they asserted pursuant to Section 11 of the Securities Act of 1933 (herein "§ 11"), 15 U.S.C. § 77k. As regards to the § 11 claims, the motion is considered separately herein. For the reasons discussed below, the portion of the Kings' motion for class certification as it relates to the assertion of claims arising under § 11 is GRANTED.

## I. BACKGROUND

The Kings filed suit on October 9, 1998 asserting claims under § 10(b) and § 11 against Garth Drabinsky, Myron Gottlieb, CIBC Wood Gundy Securities, Inc. ("CIBC Wood Gundy"), CIBC Oppenheimer Securities Corp. ("CIBC Oppenheimer"), Deloitte & Touche Chartered Accountants ("Deloitte"), and various other named individuals [1] (collectively, "Defendants") and now seek an order certifying a class (the "Noteholder Class") defined as all persons and entities, other than the Defendants, who purchased Livent, Inc. ("Livent") 9 3/8% Senior Unsecured Notes Due 2004 (the "Notes") during the period from October 10, 1997 through and including

1. These other individuals are named in paragraph 248 of the Third Amended Complaint.

2. At the time the Kings filed the present motion for class certification, they further requested that the Court certify a notcholder subclass defined as all persons and entities, other than the Defendants, who purchased Notes during the Class Period from CIBC Wood Gundy, CIBC Oppen-

August 10, 1998 (the "Class Period").[2] The Kings further seek certification of themselves as Class Representatives for the Class as well as certification of the law firms of Pomerantz Haudek Block Grossman & Gross LLP and the Law Offices of Lionel Z. Glancy as Lead Counsel for the Class. Having denied the request for class certification as the claims arising under § 10(b), the court considers whether sufficient grounds exist to warrant class certification as it relates to the Kings' claims arising under § 11.

## II. DISCUSSION

Plaintiffs seeking class certification must prove that the proposed class action satisfies four prerequisites set forth in Federal Rule of Civil Procedure 23(a), namely, that:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The burden is on the plaintiffs to show that each of these requirements has been satisfied. Additionally, plaintiffs seeking class certification must satisfy one of the categories set forth in Rule 23(b). The Kings seek certification pursuant to Rule 23(b)(3), requiring that:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

heimer, (collectively, the "CIBC Defendants") or anyone else acting on their behalf. Since that time, the Kings as Lead Plaintiffs have settled their dispute with the CIBC Defendants. (Stipulation Of Partial Settlement dated September 4, 2002.) Accordingly, that portion of the Kings' motion seeking certification of this subclass is now moot.

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

*See, e.g., In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 132–33 (2nd Cir. 2001). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d at 133.

### A. *NUMEROSITY*

■ Rule 23(a)(1) requires the Kings to show that the numerosity of the putative class members makes joinder of all its members "impracticable." "Impracticable" here does not mean impossible, and the Kings need not precisely quantify the putative class so long as they reasonably estimate its number. *See Robidoux v. Celani,* 987 F.2d 931, 935 (2nd Cir.1993); *In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 509 (S.D.N.Y.1996). "Plaintiffs may rely on reasonable inferences drawn from the available facts in order to estimate the size of the class." *In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. at 509.

This District has certified, and the Second Circuit has affirmed, classes with members as few as thirty-five to forty. *See, e.g., Marcera v. Chinlund,* 595 F.2d 1231, 1238 (2nd Cir.1979) (42 members); *Korn v. Franchard Corp.,* 456 F.2d 1206, 1209 (2nd Cir.1972) (70 members); *Town of New Castle v. Yonkers Contracting Co., Inc.,* 131 F.R.D. 38, 41 (S.D.N.Y.1990) (36 members). *Fidelis Corp. v. Litton Ind. Inc.,* 293 F.Supp. 164, 170 (S.D.N.Y.1968) (35–70 members). In this case, the evidence indicates that the number of institutional investors alone was 106. (Affidavit of Daniel Weaver dated May 31, 2002, ¶ 57.) Accordingly, the Court finds that the numerosity requirement for class certification with respect to the § 11 claims has been satisfied.

### B. *COMMONALITY*

■ Rule 23(a)(2) requires that the putative class members' claims must share common questions of fact and law. *See In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. at 509. This Court has previously explained that "[w]here ... there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail.... Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met." *In re Oxford Health Plans, Inc., Sec. Litig.,* 191 F.R.D. 369, 374 (S.D.N.Y. 2000).

■ In this case, the Kings allege that Defendants did just that, concealed material information about Livent's business and misrepresented its finances to the entire putative class of Notes purchasers and sellers in violation of the same legal rule, namely, § 11. That provision states that:

In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue—(1) every person who signed the registration statement [or] (2) every person who was a director of (or person performing similar functions) or partner in, the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted....

15 U.S.C. § 77k. Section 11 "imposes liability on issuers of securities and their officers

and directors when companies offering their shares to the public fail to provide required information, or include misleading statements, in their registration statements.... It is enough if the registration statement is shown to have contained material misstatements or omissions." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 408 (S.D.N.Y.2001).

Specifically, the Kings claim that Livent's Registration Statement and Prospectus filed with the Securities and Exchange Commission (the "SEC") initially on November 18, 1997 and in final form on December 18, 1997 (the "Registration Statement") contained inaccurate financial statements and other business information. (Third Amended Complaint, ¶¶ 49–53.) Whether the Registration Statement, at the time it became effective, was inaccurate and misleading, contained untrue statements of fact or omitted facts necessary to make the statements made therein not misleading, and whether such statements and omissions would have been material to a reasonable person reviewing the Registration Statement and financial information contained therein, are all among the questions of fact common to each member of the putative class. Accordingly, the Court finds that the commonality requirement of Rule 23(a)(2) has been satisfied.

## C. *TYPICALITY*

Rule 23(a)(3) requires that the claims of the putative class representatives be typical of those of the entire putative class. "Typicality refers to the nature of the claim of the class representatives and not to the specific facts from which the claim arose or relief is sought.... Rule 23(a)'s typicality requirement is established where ... the claims of the representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other Class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. at 510; *see In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2nd Cir.1992). "Typicality, however, does not require that the situations of the named representatives and the class members be identical." *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. at 510.

In this case, the § 11 claims of each member of the putative Noteholder Class arise from the same alleged course of conduct, namely, the inclusion of misrepresentations and material omissions in the Registration Statement that was filed with the SEC. (Third Amended Complaint, ¶¶ 249–50, 257–60, 267–79.) Therefore, the Court concludes that the Kings "have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Oxford Health Plans, Inc., Sec. Litig.*, 199 F.R.D. 119, 123 (S.D.N.Y.2001) (citations omitted; internal quotations omitted). The Court recognizes that damages for each class member, assuming liability is established, will vary in accordance with the number and size of the various transactions attributable to each; however, this Court has previously held that "damages arising from a disparity in injuries among the plaintiff class does not preclude typicality." *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y.2001); *see In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. at 377. Accordingly, the Court finds that the requirements of Rule 23(a)(3) have been satisfied.

## D. *ADEQUACY OF REPRESENTATION*

Next, the Kings must show that the putative class members will be adequately represented in this litigation. Adequacy of representation is governed by Rule 23(a)(4), which requires a twofold showing: "(1) the representatives' interests must not conflict with the class members' interests, and (2) the representatives and their attorney must be able to prosecute the action vigorously." *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. at 512; *see In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. at 376.

The "commonality and typicality requirements blend together in determining

whether the representative plaintiffs' claims are typical enough of the classwide claims that the representatives will adequately represent the class." *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. at 512 (citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Here, as explained, the Kings' claims are typical in that the allegedly misleading course of conduct by the Defendants in this matter—including misinformation in the Registration Statement—is common to them all. Also as explained, the questions of fact arising from these alleged activities are common to each putative class member, as are questions of law regarding the illegality of these alleged activities purportedly proscribed by § 11. Accordingly, the Court finds no evidence of a conflict between the Kings and the putative members of the Noteholder Class.

■ Rule 23(a)(4) also requires that the Kings' counsel "be qualified, experienced, and generally able to conduct the proposed litigation." *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. at 515. Here, the firms designated as the Kings' co-lead counsel—Pomerantz Haudek Block Grossman & Gross LLP and the Law Offices of Lionel Z. Glancy—are experienced in prosecuting class action cases, having done so on a number of occasions in the past. (Lead Plaintiffs' Memorandum of Law In Support Of Their Motion For Class Certification dated January 22, 2002, Ex. B, C.) They identify no conflicts of interest arising from their representation of the putative Noteholder Class, and their performance in this matter indicates to the Court that they are competent and capable of representing the putative class members vigorously and effectively. Accordingly, the Court finds that the requirements of Rule 23(a)(4) are satisfied.

### E. *PREDOMINANCE AND SUPERIORITY*

■ Having satisfied the prerequisites to class certification dictated in Rule 23(a), the Kings must also satisfy one of the subsections of Rule 23(b), and the Kings choose to proceed under Rule 23(b)(3). Rule 23(b)(3) requires the Court to "decide whether 'ques-

tions of law or fact common to the members of the class predominate over any questions affecting only individual members,' and whether a class action 'is superior to other available methods for the fair and efficient adjudication of the controversy.' " *Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252–53 (2nd Cir.2002) (quoting Fed.R.Civ.P. 23(b)(3)).

■ "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.; see In re Visa Check/Master-Money Antitrust Litig.*, 280 F.3d at 136. "The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2)." *Ansoumana*, 201 F.R.D. at 88–89. In this case, as explained above, each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct. The only individualized question concerns the amount of damages, which can be calculated relatively easily, when and if liability is established, in accordance with the number and size of each noteholder's purchases and sales. Accordingly, if each class member were to file a separate claim, apart from damages, the legal and factual questions in each case would be essentially the same, thus subject to generalized proof and amenable to resolution through a single class action. Furthermore, these common legal and factual questions, already identified in the Court's discussion of commonality and typicality, clearly outnumber the single individual question, the extent of damages. For these reasons, the Court finds that common questions of law and fact predominate.

Predominance is a necessary but not sufficient element of the superiority requirement of Rule 23(b)(3), *see id.* at 89, which lists the following additional considerations:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

Defendants have identified no member of the putative Noteholder Class other than the Kings who would seem to have an interest in controlling the course of the present litigation, and in light of the common and predominating issues of law and fact discussed above, the Court sees no reason to presume any. Concentrating the noteholders' claims in this District, before this Court, is an efficient expenditure of resources given that a putative class of Livent shareholders is currently pursuing claims against the same core defendants arising out of the same basic course of conduct before this Court (No. 98–CV–5686). Further, the Kings' counsel represent to the Court that they will have no difficulties managing this litigation should it be certified as a class action.

Finally, the Court notes that, in the absence of class certification, not only would separate and scattered lawsuits be needlessly repetitive and inefficient given the pervasive parallels presented above, many putative class members—particularly, retail investors—would also be discouraged from even seeking legal relief as their potential recovery would be outweighed by the transaction costs of individual litigation. *See In re Blech Securities Litigation,* 187 F.R.D. 97, 107 (S.D.N.Y.1999). For these reasons, the Court finds that, in accordance with the requirements of Rule 23(b)(3), certification of the Noteholder Class with respect to the § 11 claims is the superior alternative to individualized litigation.

## F. *PARTIAL CERTIFICATION*

This Court's November 6, 2002 Decision and Order expressed the Court's view that class certification as to claims asserted pursuant to § 10(b) should be denied because individual issues of reliance and differences between the putative class representatives and the rest of the class—the fact that the Kings were among only two percent of retail investors and conducted no primary research into their investment whereas the balance of the putative class was composed institutions who likely did—rendered the action as to the § 10(b) claims inconsistent with Rules 23(a)(3) (typicality) and 23(a)(4) (adequate representation) and Rule 23(b)(3) (predominance of common issues and superiority of the class action device). *See In re Livent, Inc. Noteholders Sec. Litig.,* 211 F.R.D. 219, 223–24, 224–25 (S.D.N.Y.2002). The Court also explained that separate trials on the issue of reliance would not be worthwhile given the absence of a common presumption of reliance that would render individual differences exceptions to the general rule. *See id.* at 223–24.

Nonetheless, for the reasons stated above, the Kings have satisfied Rule 23's requirements for class certification as to claims asserted pursuant to § 11. To avoid the wastefulness of repeatedly addressing these § 11 claims and their parallel underlying issues of law and fact in potential, scattered individual lawsuits, the Court, pursuant to Rule 23(c)(4)(A), grants their motion for class certification in relation to this claim only.[3] *See*

---

**3.** Rule 23(c)(4)(A) states that "[w]hen appropriate . . . an action may be brought or maintained as a class action with respect to particular issues. . . ." The Second Circuit Court and this District have explained that "[d]istrict courts should take full advantage of this provision to certify separate issues in order to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies." *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 167–68 (2nd Cir.2001) (citations omitted; internal quotations omitted); *In re: Methyl Tertiary Butyl Ether Products Liab. Litig.,* 209 F.R.D. 323,

351 (S.D.N.Y.2002); *Maneely v. Newburgh,* 208 F.R.D. 69, 78 (S.D.N.Y.2002). *See Simon v. Philip Morris Inc.,* 200 F.R.D. 21, 28–31 (E.D.N.Y. 2001) ("The framers of Rule 23(c)(4)(A) considered class actions brought under Rule 23(b)(3) . . . particularly well suited for certification of fewer than all issues." (citation omitted).). *See also Blyden v. Mancusi,* 186 F.3d 252, 268 (2nd Cir.1999) (while addressing Seventh Amendment implications of Rules 23(c)(4)(A) and 42(b), the Second Circuit explained that "[a]t bottom, issues may be divided and tried separately . . . ."

*In re AMF Bowling Sec. Lit.*, No. 99–CV–3023, 2002 WL 461513, at *8 (S.D.N.Y. March 26, 2002) (certifying a class to assert § 11 claims while denying class certification for § 12 claims); *Weiss v. Tenney Corp.*, 47 F.R.D. 283, 288 n. 1, 293–94 (S.D.N.Y.1969) (certifying separate classes to assert § 10(b) and § 11 claims).

Deloitte argues that because § 10(b) claims will have to be litigated separately, class certification limited to the assertion of § 11 claims does not represent a superior alternative because these claims could simply be litigated individually along with claims under § 10(b). The Court rejects this argument for two reasons. First, to date no claimants other than the Kings have identified themselves as having an interest in pursuing claims as formal plaintiffs. (Memorandum Of Law Of Defendant Deloitte & Touche Chartered Accountants In Opposition To Plaintiffs' Motion For Class Certification dated April 19, 2002, at 7; Plaintiffs' Reply Memorandum In Support Of Their Motion For Class Certification dated June 3, 2002, at 2.) Second, a class action approach limited to the assertion of § 11 claims will still reduce the burdens and complexity of the present litigation taken as a whole. *See, e.g., Robinson*, 267 F.3d at 167–68. Not only would a single consolidated action be more efficient than various parallel proceedings all addressing the same § 11 issues, but any such issues that are resolved in this single action would have preclusive effect, to the extent that the requirements for issue preclusion are satisfied, should they arise in any subsequent § 10(b) actions.

### III. CONCLUSION AND ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the portion of the Kings' motion for class certification relating to the assertion of claims pursuant to Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, is GRANTED.

**SO ORDERED.**

(citation omitted).). In this vein, the Fourth Circuit has explained that "if an action includes multiple claims, one or more of which might qualify as a certifiable class claim, the court may separate such claims from other claims in the action and certify them under the provisions of subsection (c)(4)." *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir.1993); *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728 (4th Cir.1989); *see also Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 565 (E.D.Va.2000) (same). Similarly, in *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir.1987), the Eleventh

Circuit held that the trial court abused its discretion when it found that class certification was inappropriate for § 10(b) claims and then simply refused separately to consider class certification for § 11 and § 12(2) claims. The Eleventh Circuit explained that "[t]he failure of the district court to give separate consideration to class action certification of these distinct claims thus could serve neither the securities laws' purpose of protecting investors ... nor Rule 23's purpose of protecting the courts from needlessly repetitious litigation...." *Id.* (citations omitted).