**In re LIVENT, INC. NOTEHOLDERS SECURITIES LITIGATION**

No. 98 Civ. 7161(VM).

United States District Court, S.D. New York.

Feb. 4, 2005.

See, also, 2004 WL 385048.

### DECISION AND ORDER

MARRERO, District Judge.

Lead plaintiffs Dorian and Diane King ("Plaintiffs"), on behalf of themselves and a class of investors who purchased some of the $125 million in 9 3/8% Senior Unsecured Notes Due 2004 ("the Notes") issued by Livent, Inc. ("Livent"), have filed for summary judgment on their claims against defendants Garth Drabinsky ("Drabinsky") and Myron Gottlieb ("Gottlieb") under Section 11 of the Securities Act, 15 U.S.C. § 77k ("Section 11").[1] In brief, Plaintiffs allege that Drabinsky and Gottlieb violated Section 11(a) by signing a Registration Statement for the Notes filed with the Securities and Exchange Commission on November 17, 1997 (see Amendment No. 1 to Form F–4, Registration Statement Under the Securities Act of 1933, ("Registration Statement"), attached as Ex. 1 to the Affidavit of Murielle J. Steven in Support of Lead Plaintiffs' Motion for Summary Judgment on Liability and Damages, dated November 12, 2004 ("Steven Aff.")), that was rife with material misstatements concerning the company's financial results, and by serving as directors of Livent at the time that the misleading Registration Statement was issued.[2] They have submitted extensive documentary evidence in support of the instant motion.

Drabinsky and Gottlieb, after refusing to answer the allegations of Plaintiffs' Complaint or produce documents in this litigation for more than six years in reliance on

---

1. Plaintiffs also had made claims against Drabinsky and Gottlieb under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, 15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b–5, but have notified the Court by way of the instant motion that they are withdrawing those claims voluntarily. (See Lead Plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment against Defendants Drabinsky and Gottlieb, dated November 12, 2004 (hereinafter, "Plaintiffs' Mem. of Law") at 2 n. 1.)

2. Section 11(a) states, in relevant part:

   In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue—
   (1) every person who signed the registration statement; [and]
   (2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted....
   15 U.S.C. § 77k(a).

their Fifth Amendment right against self-incrimination, now assert that they cannot be held liable for any misleading statements because they qualify for the "due diligence" defense enumerated by Section 11(b) of the Securities Act.[3] Plaintiffs resist Drabinsky's and Gottlieb's efforts to assert the defense of due diligence at this late stage of the proceedings, but argue in the alternative that the defendants fail to introduce sufficient evidence in support of their due diligence defense to survive summary judgment.

The Court concludes that while Drabinsky and Gottlieb should not be deemed to have waived the due diligence defense to liability under Section 11, evidence of the misleading nature of the Registration Statement is overwhelming and essentially uncontested, while evidence introduced in support of Drabinsky and Gottlieb's due diligence defense is woefully insufficient. Therefore, the Court grants Plaintiffs' motion for summary judgment.

## I. BACKGROUND

Plaintiffs' suit is one of a constellation of related litigation and criminal prosecutions arising out of the collapse of Livent. The Court has issued numerous decisions adjudicating issues related to suits by former Livent shareholders, noteholders, and other parties injured by the company's descent into bankruptcy. The alleged causes of the company's collapse are fully discussed in those rulings.[4] In addition, the Securities and Exchange Commission ("SEC") and the United States of America have brought civil and criminal securities fraud charges against Drabinsky and Gott-

---

3. Section 11(b) states, in relevant part:

> Notwithstanding the provisions of [Section 11(a)], no person, other than the issuer, shall be liable as provided therein who shall sustain the burden of proof—
>
> . . . .
>
> (3) that (A) as regards any part of the registration statement not purporting to be made on the authority of an expert, and not purporting to be a copy of or extract from a report or valuation of an expert, and not purporting to be made on the authority of a public official document or statement, he had, after reasonable investigation, reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading; and . . . (C) as regards any part of the registration statement purporting to be made on the authority of an expert (other than himself) or purporting to be a copy of or extract from a report or valuation of an expert (other than himself), he had no reasonable ground to believe and did not believe, at the time such part of the registration statement became effective, that the statements therein were untrue or that there was an omis-

sion to state a material fact required to be stated therein or necessary to make the statements therein not misleading, or that such part of the registration statement did not fairly represent the statement of the expert or was not a fair copy of or extract from the report or valuation of the expert. . . .

15 U.S.C. § 77k(b).

4. See, e.g., In re Livent, Inc. Sec. Litig., 78 F.Supp.2d 194 (S.D.N.Y.1999) (Sweet, J.) ("Livent Shareholders I"); In re Livent, Inc. Sec. Litig., 148 F.Supp.2d 331 (S.D.N.Y.2001) ("Livent Shareholders II"); In re Livent, Inc. Noteholders Sec. Litig., 151 F.Supp.2d 371 (S.D.N.Y.2001) ("Livent Noteholders I"); In re Livent, Inc. Noteholders Sec. Litig., 174 F.Supp.2d 144 (S.D.N.Y.2001) ("Livent Noteholders II"); In re Livent Sec. Litig., 193 F.Supp.2d 750 (S.D.N.Y.2002) ("Livent Shareholders III") (denying Drabinsky and Gottlieb's belated motions to dismiss and to make cross-claims and third-party claims); In re Livent, Inc. Noteholders Sec. Litig., 211 F.R.D. 219 (S.D.N.Y.2002) ("Livent Noteholders III") (denying Plaintiffs' motion for class certification on Section 10(b) claims); In re Livent, Inc. Noteholders Sec. Litig., 210 F.R.D. 512 (S.D.N.Y.2001) ("Livent Noteholders IV") (granting Plaintiffs' motion for class certification on Section 11 claims).

lieb related to the company's collapse.[5] These charges have not yet been resolved, in part due to the defendants' fugitive status.[6] Familiarity with the extensive background on the company described in the SEC releases and decisions cited above is assumed.

The Court will provide only brief background to the instant motion. Livent is a now-defunct company based in Toronto, Canada, that produced live theatrical entertainment. It became a public company in Canada in 1993, and registered its common stock for trading in the United States in May of 1995. The company raised substantial amounts of debt in the United States through various vehicles, including the Notes. In August of 1998, the company announced in a press release that it had discovered pervasive accounting irregularities and revenue recognition violations in prior published financial information. (See Lead Plaintiffs' Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated November 12, 2004 ("Plaintiffs' Rule 56.1 Statement") ¶ 8.) This led Livent, on November 18, 1998, to withdraw its original financial statements for 1995 through the first quarter of 1998 and to submit restated financials showing that the company had earned far less than the original financials had led investors to believe. (Id. ¶¶ 9–11.) On the same day that it submitted restated financials, Livent filed for bankruptcy in the United States and sued Drabinsky and Gottlieb.

Suits by others, including Plaintiffs, followed soon afterwards. Plaintiffs first filed suit in 1998 against Drabinsky and Gottlieb, Deloitte & Touche ("Deloitte"), Livent's auditors at the time the Registration Statement was issued, and several other parties on the basis of material misstatements allegedly contained within the Registration Statement. As described in SEC releases and alleged in Plaintiffs' Complaint, Drabinsky, who was Livent's CEO and the Chairman of its Board of Directors, and Gottlieb, who was President and, for a time, Chief Operating Officer of Livent, masterminded a scheme to produce a misleading financial picture of the company. Plaintiffs alleged that Drabinsky's and Gottlieb's corrupt activities resulted in the inclusion of materially misleading financial information in the Registration Statement. They sought class certification under Section 10(b) and Section 11 on behalf of a class of investors who had purchased the Notes between the date of their issuance and August of 1998, when the misleading nature of the company's previous financial information was revealed.

After the Court dismissed claims against certain named defendants in *Livent Noteholders I*, and denied class certification for Plaintiffs Section 10(b) claims but granted class certification for Plaintiffs' Section 11 claims in *Livent Noteholders III* and *Livent Noteholders IV*, all remaining defendants other than Drabinsky and Gottlieb settled with Plaintiffs. Current members

**5.** *See SEC v. Drabinsky*, No. 99 Civ. 239 (S.D.N.Y. filed Jan. 13, 1999) (charging Drabinsky, Gottlieb, and other Livent insiders with securities fraud); *United States v. Drabinsky*, No. 99 Cr. 17 (S.D.N.Y. filed Jan. 7, 1999) (charging Drabinsky and Gottlieb with several criminal violations of the federal securities laws); *see also In re Livent, Inc.*, Securities Act of 1933 Release No. 7627 (settling SEC civil enforcement action against Livent, ordering Livent to cease and desist from engaging in securities fraud, and determining

that Livent engaged in an accounting fraud that spanned eight years) (*"SEC Livent Release"*).

**6.** *See United States v. Drabinsky*, No. 99 Cr. 17 (S.D.N.Y. Jan. 28, 1999) (issuing arrest warrants for Drabinsky and Gottlieb). Drabinsky and Gottlieb have not returned voluntarily from Canada to the United States to face the criminal charges against them, nor have extradition proceedings been initiated against them.

of the class have submitted proofs of claim for $40,583,146. According to Plaintiffs and as uncontested by Drabinsky and Gottlieb, these damages were calculated according to the damages formula for Section 11 violations established by Section 11(e), 15 U.S.C. § 77k(e). Of those demonstrated losses, $17,250,000 has been obtained from settling defendants. Thus, class members seek $23,333,146 in damages from Drabinsky and Gottlieb.

On November 12, 2004, Plaintiffs moved for summary judgment against Drabinsky and Gottlieb. In that motion, Plaintiffs voluntarily dismissed their remaining Section 10(b) claim against the two defendants and sought summary judgment on the remaining class-certified Section 11 claim. In papers submitted in support of the motion, Plaintiffs argue that the Registration Statement contained material misstatements and that Drabinsky and Gottlieb were not entitled to the due diligence defense articulated by Section 11(b), either because they have waived the defense by not asserting it earlier in the litigation or because no material facts support the defense. Drabinsky and Gottlieb have opposed the motion by claiming the protection of the due diligence defense.

## II.  DISCUSSION

### A.  WAIVER OF DEFENDANTS' DUE DILIGENCE DEFENSE

The Court begins its analysis of Plaintiffs' summary judgment motion with the threshold question of whether Defendants may assert the due diligence defense to liability enumerated by Section 11(b) of the Securities Act. Until Drabinsky and Gottlieb filed their opposition to the instant motion, they had never before specifically indicated to Plaintiffs or to the Court that they were seeking to rely on a Section 11(b) due diligence defense. Rather, Drabinsky and Gottlieb had declined to answer all of the allegations of the Complaint on the basis of their Fifth Amendment right against self-incrimination, and had also failed to assert any affirmative defenses to liability in their Answer. Furthermore, they had refused to produce discovery on that basis throughout the more than six years that this litigation has been pending.

Plaintiffs now assert that Drabinsky and Gottlieb have waived their right to assert the due diligence defense by failing to plead it in their Answer, as required by Fed.R.Civ.P. 8(c). That rule requires an answering party to "set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." Second Circuit cases have held that failure to comply with the requirements of Rule 8(c) by asserting an affirmative defense in a responsive pleading may result in waiver of that affirmative defense. See, e.g., Doubleday & Co. v. Curtis, 763 F.2d 495, 503 (2d Cir. 1985) ("[Rule 8(c) ] is intended to notify a party of the existence of certain issues, and its mandatory language has impelled us to conclude that a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation."). Under this doctrine, according to Plaintiffs, Drabinsky and Gottlieb should be barred from asserting, and introducing evidence in support of, their due diligence defense in order to avoid summary judgment.

Drabinsky and Gottlieb respond to Plaintiffs' argument by noting that prior decisions interpreting Section 8(c) in the context of motions for summary judgment have refused to deem an affirmative defense waived unless a plaintiff demonstrates prejudice as a result of the waiver.[7]

---

7.  Drabinsky and Gottlieb also seek to call into question whether the due diligence defense may be properly considered "an avoidance or affirmative defense," as those terms are defined by Rule 8(c). (See Memorandum of Law in Opposition to Motion of Lead Plain-

*See, e.g., Steinberg v. Columbia Pictures Industries, Inc.,* 663 F.Supp. 706, 715 (S.D.N.Y.1987) ("[A]bsent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time.") (quoting *Rivera v. Anaya,* 726 F.2d 564, 566 (9th Cir. 1984)).

■ Despite Drabinsky and Gottlieb's inexcusable delay in asserting the due diligence defense, the Court declines to exercise its discretion to deem the defense waived because Plaintiffs' motion papers and evidence indicate that they suffered no surprise or other prejudice as a result of the defendants' late assertion of due diligence.[8] It is well established in this Circuit that an affirmative defense may be asserted even at summary judgment where the party opposing the affirmative defense has the opportunity to respond effectively to that defense, and has otherwise suffered no prejudice as a result of its late pleading. *See, e.g., Astor Holdings, Inc. v. Roski,* 325 F.Supp.2d 251, 260–261 (S.D.N.Y.2003) ("a district court may consider the merits of an affirmative defense—even one explicitly listed as such in Fed R. Civ. P. 8(c)—raised for the first time at the summary judgment stage, so long as the plaintiff has had an opportunity to respond") (citing *Curry v. City of Syracuse,* 316 F.3d 324, 330–31 (2d Cir.2003)); *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund,* 975 F.Supp. 258, 263 (S.D.N.Y.1997) ("[N]umerous courts have held that absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time.") (brackets and quotation marks omitted).

Plaintiffs cannot argue here that they were unfairly prejudiced by, or lacked an opportunity to respond to, Drabinsky and Gottlieb's assertion of the due diligence defense for two reasons. First, Plaintiffs thoroughly addressed the defendants' potential due diligence defense in their initial brief in support of their motion for summary judgment, even before the defense was formally raised by the defendants, as well as in their reply brief. (*See* Plaintiffs' Mem. of Law at 14–18; Lead Plaintiffs' Reply Memorandum in Support of their Motion for Summary Judgment against Defendants Drabinsky and Gottlieb, dated

---

tiffs for Summary Judgment against Defendants Drabinsky and Gottlieb, dated Dec. 13, 2004 ("Defendants' Mem. of Law") at 8.) The language of Section 11(b) of the Securities Act makes clear, however, that the defendants must assert and prove that they conducted due diligence under the standards articulated by that section. *See* 15 U.S.C. § 77k(b) (requiring a defendant to "sustain the burden of proof" on a due diligence defense). This has led several courts that has analyzed the due diligence defense to describe it as an affirmative defense. *See, e.g., In re WorldCom, Inc. Securities Litigation,* 346 F.Supp.2d 628, 659 (S.D.N.Y.2004). More generally, courts to have considered what constitutes an non-enumerated affirmative defense that must be pled under Rule 8(c) have determined that "a defense is an affirmative defense if the defendant bears the burden of proof ... [or] if it did not controvert the plaintiff's proof," *Brunswick Leasing Corp. v. Wisconsin Cent.,*

*Ltd.,* 136 F.3d 521, 530 (7th Cir.1998), although other policy considerations may come into play. *See* Charles A. Wright & Arthur R. Miller, 5 *Federal Practice & Procedure* § 1271 (3d ed. rev.2004). Because the burden of proof is on the party pleading the Section 11(b) due diligence defense, and the defense does not controvert a Section 11 plaintiff's proof, the Court concludes that the Section 11(b) due diligence defense is an affirmative defense that must be pled under Rule 8(c).

8. Drabinsky and Gottlieb also argue that the normal requirements of Rule 8 do not apply to "Fifth Amendment" answers such as the one they submitted in response to Plaintiffs' Complaint. The Court does not reach this question because it finds that Plaintiffs were not prejudiced by Drabinsky and Gottlieb's failure to raise the due diligence defense earlier in the proceedings.

Dec. 23, 2004 ("Plaintiffs' Reply Mem. of Law") at 8–21.) They thus cannot argue that they lacked the opportunity to respond to Drabinsky and Gottlieb's due diligence defense. Moreover, the Court doubts that Plaintiffs' extensive discussion of an anticipated due diligence defense was the result of mere guesswork (*see* Plaintiffs' Reply Mem. of Law at 8), given that Section 11 establishes due diligence as the primary and logical defense to what would otherwise be Drabinsky and Gottlieb's strict liability under the statute for making misleading statements in the Registration Statement.

Second, while the Court would likely reach a different conclusion if Plaintiffs were unable to gather discovery necessary for them to resist the due diligence defense as a result of Drabinsky and Gottlieb's excessive delay in raising it, the record indicates that Plaintiffs have known for some time that the defendants' state of mind, and their efforts to facilitate or resist publication of misleading disclosures, would be relevant to the outcome of the litigation. Although prima facie liability under Section 11(a) requires no proof of the defendants' state of mind, Plaintiffs would have needed to affirmatively establish the defendants' scienter in order to recover under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, 15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b–5. *See Herman & MacLean v. Huddleston,* 459 U.S. 375, 382, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) ("[A] Section 10(b) plaintiff carries a heavier burden than a Section 11 plaintiff. Most significantly, he must prove that the defendant acted with scienter, *i.e.,* with intent to deceive, manipulate, or defraud."). Until Plaintiffs voluntarily withdrew their Section 10(b) claims upon filing the instant motion, they had every reason to gather evidence concerning Drabinsky's and Gottlieb's affirmative acts and state of mind relative to the disclosures

contained in or omitted from the Registration Statement, either to establish the elements of their Section 10(b) claim *or* to defeat a potential Section 11(b) due diligence defense. Perhaps as a result, Plaintiffs' argument that the defendants' due diligence defense is inadequate as a matter of law is well supported by documentary evidence. The Court thus concludes that Drabinsky and Gottlieb's assertion of a due diligence defense under Section 11(b) should not be deemed waived.

### B. *SUMMARY JUDGMENT STANDARD*

Even though the Court will allow Drabinsky and Gottlieb to mount a due diligence defense, that defense cannot survive summary judgment unless the defendants put forth sufficient evidence to meet their burden of proof in establishing that a genuine issue of material fact exists as regards each essential element of the defense.

The Court may grant summary judgment to Plaintiffs "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court first "look[s] to the substantive law of the action to determine which facts are material. 'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Golden Pacific Bancorp. v. F.D.I.C.,* 375 F.3d 196, 200 (2d Cir.2004) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). While all reasonable inferences will be construed in favor of a nonmoving party, summary judgment will be granted against a nonmoving party un-

less "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

In this case, Plaintiffs bear the burden of proof on Drabinsky and Gottlieb's prima facie liability under Section 11. That burden, however, is a relatively slight one, requiring Plaintiffs simply to establish that the Registration Statement contained a material omission or misstatement and that they had acquired the Notes pursuant to the Registration Statement. *See Herman & MacLean*, 459 U.S. at 382, 103 S.Ct. 683 ("If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case [under Section 11]. . . . Although limited in scope, Section 11 places a relatively minimal burden on a plaintiff."). In order to prevail on their motion, Plaintiffs must come forward with evidence demonstrating that "there is no genuine issue as to any material fact" related to the misleading nature of the Registration Statement and their ownership of the Notes. Fed.R.Civ.P. 56(c).

The showing required of Plaintiffs in their challenge to the legal sufficiency of Drabinsky and Gottlieb's asserted due diligence defense, however, is significantly lessened, for the defendants must "sustain the burden of proof" as to their due diligence under the standards established by Section 11(b) in order to avoid liability under that statute. 15 U.S.C. § 77k(b); *Herman & MacLean*, 459 U.S. at 382, 103 S.Ct. 683. "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *F.D.I.C. v. Giammettei*, 34

F.3d 51, 54 (2d Cir.1994) (internal citations, brackets, and quotation marks omitted). As the *Giammettei* case goes on to state:

> While whatever evidence there is to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving defendant, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." After all, in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense "there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the [defendant's affirmative defense] necessarily renders all other facts immaterial."

*Id.* at 54–55 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (emphasis and brackets in original)). Thus, if Plaintiffs show that there is an absence of evidence in support of Drabinsky and Gottlieb's due diligence affirmative defense, they will be entitled to summary judgment on their Section 11 claim unless the defendants come forward with evidence supporting each essential element of the defense. While the Court will draw all reasonable inferences in favor of Drabinsky and Gottlieb on their affirmative defense, it will not permit them to "rely on mere conclusory allegations nor speculation, but instead" will require them to "offer some hard evidence showing that [their] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998).

## C. *PLAINTIFF'S PRIMA FACIE CASE*

■ Plaintiffs have conclusively demonstrated the absence of a genuine issue of

material fact concerning their prima facie case under Section 11. Plaintiffs, lead members of a class of purchasers of the Notes, are by definition eligible to recover under Section 11 if the Registration Statement under which their purchase was made "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a).[9] (*See* Plaintiffs' Rule 56.1 Statement ¶ 7 (establishing that Plaintiffs were purchasers of the Notes).) Drabinsky and Gottlieb do not dispute that they may be held liable under Section 11(a) by means of their signature of the Registration Statement and their roles with the company. (*See* Statement of Defendants Drabinsky and Gottlieb Pursuant to Local Rule 56.1, dated Dec. 13, 2004 ("Defendants' Rule 56.1 Statement") ¶ 6 (admitting that Drabinsky and Gottlieb signed the Registration Statement and were directors of Livent at the time they did so).)

Evidence introduced by Plaintiffs that the Registration Statement was rife with material misstatements is extensive. Plaintiffs' Rule 56.1 Statement and supporting evidence establish that the Registration Statement contained the material misstatement that Livent had earned a profit of $11.05 million for 1996 and $5.3 million for the first two quarters of 1997. (*See* Plaintiffs' Rule 56.1 Statement ¶ 5.) On November 18, 1998, Livent was forced to file a Material Change Report with the SEC that withdrew the financial statements issued in 1995 through 1997, and in the first quarter of 1998. (*See* Form 6–K, Material Change Report, dated November 18, 1998 ("Material Change Report"), at-

tached as Ex. 2 to Steven Aff.) That Material Change Report concluded that Livent had in fact lost $18 million during 1996 and $98.67 million during 1997. As described in the report, a restatement of earnings was required due to numerous accounting irregularities that had occurred during the prior reporting periods, including: the improper recording of certain transactions as revenue; the improper acceleration of revenue recognition for certain transactions; the improper capitalization of millions of dollars in expenses; the improper shifting of millions of dollars in expenses from one quarter to the next; the improper capitalization of preproduction costs for current shows as capital costs of future shows, thereby deferring recognition of those costs until future periods; and finally, the improper capitalization of certain preproduction costs to fixed assets and deferred costs. (*See* Plaintiffs' Rule 56.1 Statement ¶ 12; Material Change Report Sched. A.)

Plaintiffs have produced deposition transcripts and other evidence documenting several instances in which materially misleading information was introduced into the Registration Statement. The Court finds that at least two types of practices rendered the financial information contained in the Registration Statement materially misleading. First, Plaintiffs have put forward evidence indicating that several million dollars in advertising and other expenses were either not recorded or were shifted from period to period throughout 1996 and 1997 in what was termed an "expense roll" in order to avoid or defer recognition of those expenses. (*See* Plaintiffs' Rule 56.1 Statement ¶¶ 21–23; Deposition of Gordon Eckstein, dated March 9, 2004, attached as Ex. 4 to Steven Aff.

---

**9.** As the Court stated previously, "[a]n omission is 'material' if there is a substantial likelihood that the 'disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of the information made available.' " *Livent Noteholders I,* 151 F.Supp.2d at 408 (quoting *Steinberg v. PRT Group, Inc.,* 88 F.Supp.2d 294, 300 (S.D.N.Y.2000)).

("Eckstein Dep.") at 29–35; Material Change Report Sched. A at 3.)

Second, Plaintiffs have introduced evidence that approximately $14.2 million in 1996 and $23.3 million in 1997 in payments obtained from Pace, Dewlim, and other show presenters were improperly recognized as revenue instead of as loans. The record suggests that even if primary agreements with the presenters characterized the money paid to Livent as at risk, and thus as an investment, side agreements guaranteeing repayment of the proceeds were signed and concealed from auditors. This concealment led to the improper recognition of cash coming in from the presenters as revenue. (See Plaintiffs' Rule 56.1 Statement ¶¶ 31–33, 37; Deloitte & Touche, Report to the Audit Committee of Livent, Inc. (Nov. 18, 1998), attached as Ex. 13 to Steven Aff. ("Audit Committee Report") at D1288–D12887, D12896–D12902;[10] Eckstein Dep. at 111–124.) Other accounting violations documented in the Material Change Report, including the corruption of Livent's computerized general ledger system and the improper capitalization of expenses, are also supported by Plaintiffs' evidence. (See Plaintiffs' Rule 56.1 Statement ¶¶ 18–37; Plaintiffs' Reply Mem. of Law at 12–21.)

While Drabinsky and Gottlieb dispute the accuracy of the Material Change Report and attempt to assert that certain of the allegedly improper accounting transactions reversed by the Material Change Report were valid, they openly admit in their opposition papers that the financial information contained in the Registration Statement was misleading. (See, e.g., Memorandum of Law in Opposition to Motion of Lead Plaintiffs for Summary Judgment against Defendants Drabinsky and Gottlieb ("Defendants' Mem. of Law") at 20

("Plaintiffs rely almost exclusively on the testimony of Gordon Eckstein ... who orchestrated *the accounting irregularities at issue herein*"); *id.* at 21 ("The record shows that Livent's financial statements contained in the Registration Statement *were misstated* through a scheme of accounting manipulations orchestrated and contrived by Eckstein") (emphasis added).)

While their Rule 56.1 Statement summarily denies that the Registration Statement was materially misstated (see Defendants' Rule 56.1 Statement ¶ 5), the only evidence introduced by Drabinsky and Gottlieb that could reasonably be read to contest Plaintiffs' evidence of the Registration Statement's inaccuracy addresses the propriety of accounting for Livent's relationship with Pace. (See Affidavit of Robert Topol ("Topol"), dated Dec. 6, 2004 ("Topol Aff.") ¶¶ 4, 7–8, Exhs. 2–5, 20.) But, as discussed further *infra,* documents put forward by Drabinsky and Gottlieb which certified to auditors that the Pace transaction represented a true business risk rather than a loan do not disclose the existence of the secret side agreements guaranteeing repayment. Topol, a former Livent Chief Operating Officer who is Drabinsky and Gottlieb's sole affiant and who was deposed by the SEC in 1998, states in his deposition before the SEC that these side agreements were, to his knowledge, never disclosed. (See Plaintiffs' Rule 56.1 Statement ¶¶ 31–39; Deposition of Robert Topol, dated Sept. 25, 1998 ("Topol Dep."), attached as Ex. 2 to Topol Aff., at 367–74 (indicating that, to his knowledge, the side agreements were not disclosed to Deloitte), 397–405 (stating, with respect to the Pace side agreements, "Garth [Drabinsky] said they don't have to see everything").) The Topol affidavit also asserts in conclusory fashion that the Dewlim

10. Drabinsky and Gottlieb have raised no objection to the admissibility of the audit committee report on summary judgment, although they dispute its accuracy.

transaction was properly treated as revenue, rather than as a loan. (*See* Topol Aff. ¶¶ 9–11.) As discussed *infra*, this portion of the affidavit is made in reliance on inadmissible pleadings, and is not based on personal knowledge, as required by Fed. R.Civ.P. 56(e). But even if Topol's assertions concerning the Pace and Dewlim transactions were credited, the transactions comprise only two of the many that served as the basis for Livent's subsequent determination that financial information contained within the Registration Statement was materially misstated.

Drabinsky and Gottlieb apparently believe that the Material Change Report was itself materially misstated and compromised. They have therefore decided to devote a substantial portion of their Rule 56.1 Statement to an elaborate tale related to the alleged flaws in announcements and restatements issued by Livent in August of 1998 and in the Material Change Report. (*See* Defendants' Rule 56.1 Statement ¶¶ 44–61.) But the defendants fail to realize that the accuracy of the Material Change Report is not at issue in this litigation; the only issues relevant to Plaintiffs' suit are whether the Registration Statement itself contained material omissions or misstatements, and whether notwithstanding the presence of material omissions or misstatements in the Registration Statement, Drabinsky and Gottlieb may avoid liability on the basis of a due diligence defense.

Because Drabinsky and Gottlieb admit that the Registration Statement contained material misstatements, and fail to offer any evidence calling into question the misleading nature of the company's financial results for 1996 and the first two quarters of 1997, Plaintiffs have established Drabinsky and Gottlieb's prima facie liability under Section 11 as a matter of law.

## D. *THE DUE DILIGENCE DEFENSE*

### 1. *Plaintiffs' Evidence and Defendants' Burden*

The Court finds initially that Plaintiffs have more than satisfied their Rule 56 burden by showing that there is an absence of evidence to support an essential element of Drabinsky and Gottlieb's due diligence defense. *See Giammettei*, 34 F.3d at 54. Though Plaintiffs are not required to introduce evidence negating the affirmative defense, they have done so by introducing excerpts of several deposition transcripts, audit reports, and other evidence indicating that Drabinsky and Gottlieb initiated, facilitated, or otherwise had knowledge of the accounting transactions that rendered the Registration Statement materially misleading.

Plaintiffs' evidence of Drabinsky and Gottlieb's wrongdoing is drawn in part from internal business records and public disclosures, but is also supported by depositions taken of senior Livent personnel, including those of Gordon Eckstein ("Eckstein"), former Senior Vice President of Livent, Dianne Winkfein ("Winkfein"), former corporate controller, Grant Malcolm ("Malcolm"), a production controller, Tony Fiorino ("Fiorino"), another production controller, and Robert Webster, a Livent executive who succeeded Drabinsky and Gottlieb. Their testimony collectively indicates that Drabinsky and Gottlieb directed Livent accounting personnel to make a series of improper adjustments to the company's accounting records and financial statements. (*See* Plaintiffs' Rule 56.1 Statement ¶¶ 17–34, 37; Steven Aff. Exhs. 4–8 (deposition transcripts of Eckstein, Winkfein, Malcolm, Fiorino, and Webster).)

Drabinsky and Gottlieb may not avoid summary judgment merely by calling into question the credibility of certain of the witnesses relied upon by Plaintiffs to ne-

gate their due diligence defense. Rather, in order for their defense to survive summary judgment, Drabinsky and Gottlieb must introduce evidence that would support a finding at trial that materially misleading information was incorporated into the Registration Statement *despite* their reasonable efforts to ensure the Registration Statement's accuracy. The burden facing Drabinsky and Gottlieb varies somewhat based on the location of the materially misleading information. If the misleading information was incorporated into the financial statements for 1996 and 1995 that were certified by Deloitte before their inclusion into the Registration Statement, then the defendants may avoid liability if they "had no reasonable ground to believe and did not believe ... that the statements therein were untrue or there was an omission to state a material fact...." 15 U.S.C. § 77k(b)(3)(C). If the misleading information was incorporated into the unaudited financials for the first half of 1996 and 1997 that appeared in the Registration Statement, however (*see* Registration Statement at 15) ("The summary balance sheet data as of June 30, 1996 and 1997 and the statements of operations data for the six months ended June 30, 1996 and 1997 are unaudited, but, in the opinion of management of the Company, reflect all adjustments (consisting only of normal, recurring adjustments, necessary for the fair presentation of results for such periods.")), the defendants are liable unless they can prove that they had, "after reasonable investigation, reasonable ground to believe, and did believe ... that the statements therein were true...." 15 U.S.C. § 77k(b)(3)(A). *See Escott v. BarChris Constr. Corp.,* 283 F.Supp. 643, 683 (S.D.N.Y.1968) (concluding that "the only parts of [a] registration statement which purported to be made upon the authority of an expert were the portions which purported to be made on [the auditor's] authority"); *see also In re WorldCom, Inc.*

*Sec. Litig.,* 346 F.Supp.2d 628, 674 (S.D.N.Y.2004) (noting the continued relevance of the *Escott* decision in interpreting the due diligence defense to liability under Section 11).

The burden of proof Drabinsky and Gottlieb must satisfy on summary judgment, particularly with respect to the unaudited financials on which a reasonable investigation had to be made in order for the due diligence defense to be available, is a heavy one. "Today, as in 1933 when Section 11 became law, the word 'investigation' connotes a 'thorough' or 'searching inquiry.'" *In re Worldcom,* 346 F.Supp.2d at 678. They also must explain why they lacked "reasonable ground to believe" that the information contained in the audited 1996 financials was materially misleading, and how they might refute the substantial evidence on the record indicating that, in fact, they themselves were primarily responsible for the inclusion of false or misleading information in the Registration Statement.

As inside directors, with intimate knowledge of corporate affairs and the transactions that were accounted for in a materially misleading manner, Drabinsky and Gottlieb must put forward evidence that the misleading information was incorporated notwithstanding their reasonable efforts to ensure the Registration Statement's accuracy. They cannot satisfy this burden by pleading ignorance of the accounting issues involved, *see Escott,* 283 F.Supp. at 684 ("The liability of a director who signs a registration statement does not depend upon whether or not he read it or, if he did, whether or not he understood what he was reading."), or by blindly relying on outside counsel or auditors to ferret out inaccuracies, especially those that they were aware of or had even been responsible for introducing into the company's financials. *See id.* at 685 (holding that a

corporate insider could not demonstrate due diligence on the basis of his reliance on outside auditors and lawyers where he had knowledge of facts that rendered the operative registration statement misleading). Furthermore, even if Drabinsky and Gottlieb could claim the benefit of the due diligence defense with respect to certain of the misleading transactions, their knowledge of, or failure to investigate, other misleading transactions prevents them from claiming the protection of the defense. *See id.* at 686 (concluding that an insider's knowledge of some of the inaccuracies contained in a registration statement negates the due diligence defense).

### 2. *Defendants' Evidence*

■ With that burden in mind, the Court turns to the evidence submitted by Drabinsky and Gottlieb in support of their due diligence defense and finds it utterly inadequate to raise a genuine issue of material fact. The primary evidence they have put forward, the affidavit submitted by Topol, fails to comply with the requirements of Rule 56(e) in almost all respects.[11] Other aspects of Topol's affidavit and supporting exhibits raise issues that are irrelevant to the due diligence defense, or that are clearly contradicted by Topol's own earlier deposition testimony. None of Drabinsky and Gottlieb's evidence indicates that the defendants conducted necessary due diligence on either the audited or unaudited financials contained within the Registration Statement.

Assertions contained within Topol's affidavit must comply with the requirements of Fed.R.Civ.P. 56(e) to be admissible on summary judgment. *See* Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits *shall be made on personal knowledge,* shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.") (emphasis added). The assertions must be more than conclusory, *see Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir.2004) (concluding that a party may not create a genuine issue for trial "merely by the presentation of assertions that are conclusory"), and must describe the basis on which Topol is competent to testify to the matters contained in the affidavit.

Among several infirmities in Topol's affidavit is its reproduction of extended excerpts from pleadings submitted by Drabinsky and Gottlieb in Canada, where the Fifth Amendment privilege they invoked

---

11. Drabinsky and Gottlieb have twice sought the Court's permission to submit a supplemental affidavit for Topol, as well as a sur-reply brief, that would clarify that Topol would be available to testify at trial and that he would testify based on his personal knowledge of the information contained therein. *See In re Livent, Inc. Noteholders Sec. Litig.,* 98 Civ. 7161 (S.D.N.Y. Jan. 14, 2005) (memo-endorsed order denying defendants' leave to file sur-reply brief and supplemental Topol affidavit); Letter from Ronald A. Nimkoff, Attorney for Drabinsky and Gottlieb, to the Court (Jan. 27, 2005) (again seeking leave to file sur-reply affidavit). The Court does not believe that sur-reply papers are called for under the circumstances. As the Court stated in its January 14, 2005 refusal to grant the defendants leave to file sur-reply papers, further motion practice at this stage would interpose unnecessary delays in the resolution of the merits of this longstanding litigation. The Court further concludes that a supplemental affidavit from Topol in which Topol would attest to his availability for trial and his personal knowledge of the matters contained in the affidavit would not affect the Court's consideration of materials submitted in support of Drabinsky and Gottlieb: Topol is not required to explicitly recite that he is available to testify at trial in order for his affidavit to be considered by the Court, *see Santos v. Murdock,* 243 F.3d 681, 684 (2d Cir.2001) (citing *Banco de Espana v. Federal Reserve Bank of New York,* 114 F.2d 438, 444–45 (2d Cir. 1940)), and his personal knowledge of information contained within the affidavit cannot be demonstrated by mere incantation.

in the instant proceedings was not available to enable them to remain completely silent in the face of litigation proceeding against them in the courts of that country. Portions of the affidavit that recite these pleadings go on to state that, "to the best of [Topol's] knowledge," the allegations contained within the excerpted pleadings are correct. Drabinsky and Gottlieb cannot use these unverified, self-serving pleadings as a sword to resist summary judgment, especially where they claimed the Fifth Amendment's protections as a shield to avoid submitting themselves to questioning on the substantive issues addressed by the pleadings. Nor does Topol's conclusory assertion that the unverified pleadings are accurate "to the best of [his] knowledge" convert what would otherwise be inadmissible statements into evidence that is admissible to defeat summary judgment. Just as allegations in affidavits put forth on "information and belief" are inadmissible on summary judgment, see *Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. at 831, 70 S.Ct. 894; *Patterson*, 375 F.3d at 219, so too are the portions of Topol's affidavit that incorporate statements by Drabinsky and Gottlieb and are only accurate to the best of his knowledge, which may be limited or nonexistent.[12] Thus, paragraphs 5–6, 10–11, and 20–23 of Topol's affidavit, as well as the exhibits on which they rely, are inadmissible to resist summary judgment under Rule 56(e).

■ Turning to the merits of the due diligence defense, the Court concludes that Drabinsky and Gottlieb fail to introduce sufficient evidence of their due diligence in connection with the Dewlim transaction. Paragraph 9 of Topol's affidavit alleges in conclusory fashion that Eckstein's testimony concerning the Dewlim transaction "is also false and inaccurate." (Topol Dep. ¶ 9.) It does not explain why Topol would know how the Dewlim transaction was documented, treated for accounting purposes, or audited by Deloitte. To the contrary, Topol admitted in his SEC deposition that the Dewlim deal was Gottlieb's responsibility, and that he had no dealings with auditors related to the transaction. (*See* Topol Dep. at 55 (Q: "Is there any particular reason you weren't involved in the deal with Dewlim?" A: "It was a Myron [Gottlieb] deal. It was a Myron relationship and he went out and did the deal."), 431–38 (admitting that he had no direct knowledge of how the Dewlim deal was structured or how Livent's auditors dealt with accounting issues related to the transaction).) Topol does not explain how he may have learned about the nature of the Dewlim transaction since his deposition was taken, and no independent evidence indicates that Drabinsky and Gottlieb themselves be-

12. Of course, Drabinsky and Gottlieb are unavailable to verify their own pleadings due to their decision to invoke the Fifth Amendment in response to questioning. But having made the choice to invoke their right against self-incrimination, Drabinsky and Gottlieb must be prepared to suffer the consequences of that choice. *See United States v. Certain Real Property and Premises Known as 4003–4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 83 (2d Cir.1995) ("[A] 'party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence,' and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation.") (quoting *United States v. Taylor*, 975 F.2d 402, 404 (7th Cir.1992)). In addressing this point, the Court does not mean to imply that, if Drabinsky and Gottlieb had been available to verify their pleadings, provide documents, or submit to cross-examination at depositions, they necessarily would have been able to survive summary judgment. To the contrary, every indication on the substantial record before the Court suggests that Drabinsky and Gottlieb had strong reasons to believe that their truthful answers to questions concerning Livent's accounting fraud would be incriminating.

lieved that the transaction was accounted for properly. Consequently, based solely on Topol's affidavit, Drabinsky and Gottlieb cannot claim the protection of the due diligence defense to liability for inclusion of the Dewlim transaction as revenue on the Registration Statement.

Drabinsky and Gottlieb's defense with respect to the Pace transaction is similarly flawed. Topol was personally involved in negotiating and structuring the Pace transaction, and it therefore cannot be said that his assertions with respect to the transactions are not based on personal knowledge. But Topol's substantive claims with respect to the accounting for the transaction contained in Paragraphs 4, 7, and 8 of his affidavit (as well as the inadmissible paragraphs 5 and 6, which recite and rely on Drabinsky's unverified Canadian pleading), as well as in the attached exhibits cited by the affidavit, are completely undermined by his deposition testimony cited above. While Topol alleges that the Pace transaction was structured as a true business risk, and points to documents prepared or executed by Pace in which the transaction was allegedly described as such, his statements during the SEC deposition indicate that the side agreement guaranteeing repayment was deliberately concealed at the direction of Drabinsky, and that Gottlieb was aware of the concealment. (*See* Topol Dep. at 401 ("Garth [Drabinsky] said they [*i.e.,* the auditors] don't have to see everything."), 405 (stating that Gottlieb was present at the meeting in which Drabinsky directed

that the side agreement not be revealed).) Furthermore, Topol's deposition testimony indicates that he was less interested in conducting due diligence on the proper accounting for the Pace transaction than his affidavit asserts. (*See id.* at 402 ("There was one meeting specifically where we were reviewing the terms, wording, and this very same concern [about concealing the side agreement from the auditors] came up, and I said specifically, 'Screw you and your auditors, do whatever the hell you want. I don't care what they see or don't see,' and I stormed out of the meeting.").) Topol cannot manufacture an issue for trial on the basis of conflicts between his deposition testimony and his affidavit. *See Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."); *United States v. Dercacz,* 530 F.Supp. 1348, 1351 (E.D.N.Y.1982).[13] The evidence on the record, both in materials submitted by the defendants themselves and in Plaintiffs' documents, thus indicates that, far from seeking to ensure that the Pace transaction was properly accounted for in the Registration Statement, Drabinsky and Gottlieb instead actively facilitated its improper accounting treatment. A due diligence defense cannot be available to them for this transaction.

13. Moreover, Exhibits 3 and 4 to Topol's affidavit do not lend any support to Drabinsky and Gottlieb's defense. Exhibit 3, which purports to be an internal Pace memorandum, describes the deal proposed by Livent as a "$5,000,000 loan paid back over 125 weeks," and an attached spreadsheet classifies the Showboat transaction as a loan with repayment and interest terms. Exhibit 4, a letter from Livent to Deloitte attaching a letter in which Pace certifies that two agreements (not themselves attached to the exhibit) between the parties related to two Livent shows do not give rise to an obligation on Livent's part to perform. But the letter cites only two attached agreements, rather than the four—the main agreements and the concealed side financial participation agreements—that Topol testifies were entered into by the parties.

Drabinsky and Gottlieb's evidence with respect to the expense transfers is also directly undermined by Topol's contradictory deposition testimony. Topol asserts in his affidavit that, to his knowledge, no improper expense transfers occurred, and that to the degree they may have occurred, the transfers were initiated by Eckstein without the knowledge of Topol, Drabinsky or Gottlieb. (*See* Topol Aff. ¶¶ 12–16.) But Topol testified before the SEC that he was present, along with Drabinsky and Gottlieb, at several meetings in which transfers of costs from one period to the next were discussed. Topol was asked by the SEC: "During these meetings where these cost transfers were discussed, was there any discussion about concealing these types of transfers from Livent's outside auditors?" Topol responded: "I remember specifically what was being discussed that the quarterly numbers were not audited by the auditors and that the audit wouldn't take place until the year-end and therefore quarterly numbers were, by and large, estimates anyway, and that therefore it wouldn't be that important." (Topol Dep. at 234.) This knowing deception with respect to unaudited financial statements is far from the "reasonable investigation" that was required of Drabinsky and Gottlieb by 15 U.S.C. § 77k(b)(3)(A), and is completely inconsistent with the portions of Topol's affidavit that disclaim his, Drabinsky's, or Gottlieb's knowledge of any cost transfers from one quarter to the next.

Other portions of Topol's deposition go further by recounting instances in which Drabinsky or Gottlieb actually initiated cost transfers from quarter to quarter. When asked, "Who initiated the discussions of the transfer of these costs typically?" Topol replied: "Probably Garth [Drabinsky]. I say probably because, you know, he would be the guy that would have the most interest, him and Myron, because they held significant amount of shares...."

I recall him initiating [the discussions about cost transfers]." Later on in his deposition, Topol stated that, after Eckstein and Maria Messina ("Messina") told Drabinsky and Gottlieb that cost transfers from period to period were inappropriate, "Garth [Drabinsky] would say go back and figure out a way, and you know.... Just like that, go figure out a way. That was the end of the sentence. There is the personality the way you're dealing with. This is a guy that's used to giving orders.... Yes, he was very hands on." (Topol Dep. at 162–63.) Topol also states his belief that the cost transfers were initiated during the first half of 1997, and that the movement of advertising expenses from show to show, and consequently from period to period, were generally initiated by Drabinsky. (*See* Topol Dep. at 196–99; *see also id.* at 242–44 (indicating that Drabinsky would insist that cost transfers be made over the resistance of Eckstein and Messina).) Because Topol's unsupported assertions with respect to Drabinsky and Gottlieb's knowledge of cost transfers are directly contradicted by his deposition testimony, they cannot raise a genuine issue of material fact with respect to Drabinsky and Gottlieb's due diligence.

Topol's other allegations with respect to the Registration Statement may be quickly disposed. Topol claims that he, Drabinsky, and Gottlieb had no role in the preparation of financial materials contained within the Registration Statement, and that the three of them completely relied on Eckstein, Messina, and outside personnel to ensure the Registration Statement's accuracy. (*See* Topol Aff. ¶¶ 25–27.) This allegation, in addition to being unsupported by any indication that Topol had personal knowledge of Drabinsky's and Gottlieb's activities with respect to the Registration Statement and inconsistent with deposition testimony discussed above concerning Drabinsky and

Gottlieb's participation in accounting frauds, is insufficient as a matter of law to establish due diligence. As *Escott* makes clear, blind reliance on others does not substitute for the due diligence that defendants must demonstrate to avoid Section 11 liability. *See Escott*, 283 F.Supp. at 684–85.

Because the Court finds that Drabinsky and Gottlieb have failed to raise a genuine issue of material fact with respect to their due diligence on any of the misleading financial information incorporated into the Registration Statement, the Court concludes that Plaintiffs are entitled to judgment as a matter of law on their Section 11 claims. It is thus unnecessary to draw an adverse inference against Drabinsky and Gottlieb as a consequence of their invocation of Fifth Amendment rights, even though such an inference would be available, warranted under the circumstances of the case, and, were the Court to avail itself of the procedure, would only further bolster Plaintiffs' case.[14]

## E. *DAMAGES*

Plaintiffs have stated in their Rule 56.1 Statement, and in an attached document describing a partial settlement that was approved by the Court, that members of the class represented by Plaintiffs have suffered $40,583,146 in damages cognizable under Section 11. (*See* Plaintiffs' Rule 56.1 Statement ¶ 40; Notice of Proposed Partial Settlement and Settlement Hearing, *In re Livent, Inc. Noteholders Sec. Litig.*, Master File No. 98 Civ. 7161 (S.D.N.Y. Sept. 29, 2003), attached as Ex. 20 to Steven Aff. ("Settlement Notice").) They represent that $17,250,000 of those demonstrated losses have been obtained from settling defendants, leaving $23,333,146 in damages to be recovered from Drabinsky and Gottlieb, jointly and severally. *See* Section 11(f), 15 U.S.C. § 77k(f) (establishing joint and several liability for Section 11 violations by inside directors such as Drabinsky and Gottlieb).

Drabinsky and Gottlieb do not introduce a single piece of evidence or even make a single argument that Plaintiffs' damages were improperly calculated. Further, the Court has previously approved partial settlements on the basis of this damage calculation. Because the Court finds no genuine issue of material fact in dispute with respect to class members' damages, the Court concludes that Plaintiffs are entitled to summary judgment on the issue of damages as well. Judgment shall therefore be entered against Drabinsky and Gottlieb for the amount of uncompensated loss already established by the class: $23,333,146. This amount may be reduced by deductions for any applicable reasonable attorney's fees and costs approved by the Court on separate application, and the balance is to be distributed on a pro-rata basis to each class member who has previously submitted a signed and sworn proof of claim, with supporting documentation, in connection with previous partial settlements approved in the case. Damages will be apportioned according to the formula established by those settlements, which the Court has previously approved as being consistent with the statutory formula for damages prescribed by Section 11(e), 15 U.S.C. § 77k(e).

---

14. As the Supreme Court has stated, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *see also SEC v. Bren-* *nan*, 230 F.3d 65, 76 (2d Cir.2000) (same); *SEC v. Global Telecom Services, L.L.C.*, 325 F.Supp.2d 94, 109 (D.Conn.2004) (drawing adverse inference on summary judgment where other evidence supported defendants' liability).

The Court declines to extend the litigation further by beginning any new proof of claim procedure for class members. This litigation has been pending for more than six years, and class members have had at least four opportunities to submit proofs of claim during that time, when initial class notifications and notices of partial settlement are taken into account. Consequently, the Court will direct that the damages authorized by this decision be awarded to class members who have already submitted sufficient proofs of claim in connection with Plaintiffs' previous Court-approved settlements with other defendants in this action. Nonetheless, the Court will stay entry of the judgment for ten days from the date of this Order, and direct that it be entered then unless during that time Plaintiffs have provided sufficiently controlling reasons or authority compelling the commencement of a new proof of claim procedure encompassing additional members of the class.

## III. *ORDER*

For the reasons discussed above, it is hereby:

**ORDERED** that the motion of Lead Plaintiffs Dorian and Diane King ("Plaintiffs"), on behalf of themselves and a class of investors who purchased some of the $125 million in 9 3/8% Senior Unsecured Notes Due 2004 ("the Notes") issued by Livent, Inc. ("Livent"), for summary judgment on their claims against defendants Garth Drabinsky ("Drabinsky") and Myron Gottlieb ("Gottlieb") under Section 11 of the Securities Act, 15 U.S.C. § 77k ("Section 11"), is granted; and it is further

**ORDERED** that judgment shall enter against Drabinsky and Gottlieb in the amount of $23,333,146, jointly and severally. This amount may be reduced by deductions for any applicable reasonable attorney's fees and costs approved by the Court on separate application, and the balance is to be distributed on a pro-rata basis to each class member who has previously submitted a signed and sworn proof of claim, with supporting documentation, in connection with previous partial settlements approved in the case. Damages shall be apportioned among class members according to the formula prescribed by those prior partial settlements; and it is further

**ORDERED** that notice shall be sent to all parties and all class members advising them of the entry of judgment against Drabinsky and Gottlieb, and of any motion for reasonable attorney's fees and costs that co-lead counsel for Plaintiffs may submit pursuant to Fed.R.Civ.P. 23(h). Any such motion pursuant to Rule 23(h), as well as any supplemental papers related to the judgment (*e.g.,* satisfaction of the judgment and distribution of proceeds to class members), shall be submitted to the Court by no later than March 18, 2005. Notice of the judgment and any Rule 23(h) motion shall be mailed to parties and class members by no later than that date. Any party or class member objecting to the Rule 23(h) motion must do so by no later than April 29, 2005; and it is finally

**ORDERED** that the Clerk of Court shall stay entry of the judgment authorized herein for ten days from the date of this Order, and to enter such judgment at that time, unless Plaintiffs have provided to the Court sufficiently controlling reasons or authority compelling the commencement of a new proof of claim procedure encompassing additional members of the class, in which event the Court may so find and continue the stay of entry of judgment as appropriate.

Upon entry of judgment, the Clerk of Court is directed to close this case, provided, however, that the Court shall retain jurisdiction for the purposes of any proceedings necessary to enforce the judg-

ment authorized herein, and to consider any motion for attorney's fees and costs. **SO ORDERED.**