**In re NATURAL GAS COMMODITIES LITIGATION.**

**No. 03 Civ. 6186 VM JCB.**

United States District Court, S.D. New York.

Sept. 30, 2005.

Ali Oromchian, Finkelstein Thompson & Loughran, San Francisco, CA, Peggy J. Wedgworth, Gary S. Jacobson, Lovell & Stewart, LLP, New York City, Bernard Persky, Craig L. Briskin, Vaishali Shetty, Goodkind Labaton Rudoff & Sucharow LLP, New York City, Christopher Lovell, Lovell Stewart Halebian LLP, New York City, for Cornerstone Propane Partners, L.P.

Ali Oromchian, Finkelstein Thompson & Loughran, San Francisco, CA, Christopher J.

Gray, Law Office of Christopher J. Gray, P.C., New York City, Christopher Lovell, Lovell, Stewart, Halebian, L.L.P., New York City, Gary S. Jacobson, Lovell & Stewart, L.L.P., New York City, Louis F. Burke, Louis F. Burke, P.C., New York City, Bernard Persky, Craig L. Briskin, Vaishali Shetty, Goodkind Labaton Rudoff & Sucharow LLP, New York City, for Roberto E. Calle Gracey.

Ali Oromchian, Finkelstein Thompson & Loughran, San Francisco, CA, Bernard Persky, Craig L. Briskin, Vaishali Shetty, Goodkind Labaton Rudoff & Sucharow LLP, New York City, for Dominick Viola, Jr.

Gregory Copeland, Holly Roberts, J. Michael Baldwin, James Hail, Mark Robeck, Baker Botts, L.L.P., Houston, TX, Paul Anthony Ragsua, Baker Botts LLP, New York City, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathatn L. Abram, Hogan & Hartson, L.L.P., New York City, for Reliant Energy Services, Inc.

Blossom Kan, John L. Hendricks, Orrin L. Harrison, III, Akin Gump Strauss Hauer & Feld LLP, New York City, for Centerpoint Energy Houston Electric, L.L.C.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Mark Robert Hellerer, Pillsbury Winthrop Shaw Pittman, LLP, New York City, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson L.L.P., New York City, Michael J. Kass, Pillsbury Winthrop Shaw LLP, San Diego, CA, for Dynegy Marketing and Trade.

Mark Robert Hellerer, Pillsbury Winthrop Shaw Pittman, LLP, New York City, Michael J. Kass, Pillsbury Winthrop LLP, San Francisco, CA, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, for Dygeny Holdings, Inc. and Dygeny, Inc.

Geoffrey Milbank Horn, Richard Wolfe Cohen, Lowey, Dannenberg, Bemporad and Selinger P.C., White Plains, NY, J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Jay Kevin Musoff, Diana L. Weiss, Orrick, Herrington & Sutcliffe, LLP, New York City, Robert Mark Brigantic, Summit, Rovins & Feldesman, New York City, Douglas R. Tribble, Pillsbury Winthrop, LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for Aquila Energy Marketing Corp. and Aquila Merchant Service, Inc.

Geoffrey Milbank Horn, Richard Wolfe Cohen, Lowey, Dannenberg, Bemporad and Selinger P.C., White Plains, NY, J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Robert Mark Brigantic, Summit, Rovins & Feldesman, New York City, Steven J. Routh, Hogan & Hartson, LLP, Washington, DC, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for AEP Energy Service and American Electric Power Company, Inc.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, Stephanie J. Goldstein, Fried, Frank, Harris, Shriver & Jacobson, New York City, for El Paso Merchant Energy, L.P. and El Paso Corporation.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Jeffrey M. Shohet, Mark H. Hamer, Noah A. Katsell, DLA Piper Rudnick Gray, Gary US LLP, San Diego, CA, Stanley J. Panikowski, Gray Cary Ware & Freidenrich LLP, San Diego, CA, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for Williams Energy Marketing and Trading Company and Williams Companies, Inc.

Peter Joseph Kadzik, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, for Duke Energy Corporation.

Banks Brown, Patrick S. Sinclair, Robert E. Rice, McDermott, Will & Emery, New York City, J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Diana L. Weiss, Orrick,

Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for CMS Energy Corporation.

Melvin Arnold Brosterman, Stroock & Stroock & Lavan LLP, New York City, for Sempra Energy.

Anthony D. Boccanfuso, James D. Mangiafico, Arnold & Porter LLP, New York City, Richard P. Swanson, Thelen, Reid & Priest, L.L.P., New York City, for Enserco Energy, Inc.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Robert A. Sacks, Sullivan & Cromwell, Los Angeles, CA, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for WD Energy Services and Encana Corporation.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Jill Diane Fairbrother, Kenneth M. Raisler, Sullivan & Cromwell, L.L.P., New York City, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for Entergy-Koch Trading, L.P.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Kenneth Conboy, Latham & Watkins, LLP, New York City, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for Koch Industries, Inc.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Mary Anne Sullivan, William H. Johnson, Hogan and Hartson, L.L.P., Houston, TX, Mary Anne Sullivan, William H. Johnson, Hogan and Hartson, L.L.P., Washington, DC, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for Cook Inlet Energy Supply, L.L.C.

Mary Anne Sullivan, William H. Johnson, Hogan and Hartson, L.L.P., Washington, DC, for Cook Inlet Region, Inc. and Inupiat Energy Corporation.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Robert A. Jaffe, Kutak, Rock, L.L.P., New York City, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for Midamerican Energy Company.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Richard T. Marooney, Jr., King & Spalding, LLP, New York City, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for MIECO, Inc.

David G. Hetzel, Leboeuf, Lamb, Greene & Macrae, LLP, New York City, Dennis Kerrigan, Jr., Leboeuf, Lamb, Greene & Macrae, LLP, Hartford, CT, for Idaho Power Co. and Idacorp., Inc.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Patrick M. McGuirk, Sidley Austin Brown & Wood LLP, New York City, Steven M. Bierman, Sidley, Austin, Brown & Wood, New York City, Thomas K. Cauley, Chicago, IL, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for Cinergy Services, Inc. and Cinergy Corp.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for Does, 1-100.

Michael J. Kass, Pillsbury Winthrop LLP, San Francisco, CA, for West Coast Power, LLC.

Steven M. Bierman, Sidley, Austin, Brown & Wood, New York City, for Cinergy Marketing & Trading, LP.

J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, Peter J. Kadzik, Dickstein, Shapiro, Morin & Oshinsky LLP, Washington, DC, for Duke Energy Trading and Marketing, L.L.C.

Felice Beth Galant, Robert D. Owen, Fulbright & Jaworski L.L.P., New York City, J. Michael Baldwin, Baker Botts L.L.P., Houston, TX, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York City, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York City, for Coral Energy Holding, L.P. and Coral Energy Resources L.P.

Anthony D. Boccanfuso, James D. Mangiafico, Arnold & Porter LLP, New York City, Richard P. Swanson, Thelen, Reid & Priest, L.L.P., New York City, for Calpine Energy Services, L.P.

Robert C. Micheletto, Jones Day, New York City, for E Prime, Inc.

Karen Michele Crupi-Fitzgerald, Heller Ehrman, White & McAuliffe, LLP, New York City, for Oneok Energy Marketing and Trading Company, L.P. and Oneok, Inc.

Jerome S. Hirsch, Peter E. Greene, Skadden, Arps, Slate, Meagher & Flom, L.L.P., New York City, for Western Gas Resources, Inc.

Alia Lyerly Smith, Nathan Siegel, Levine, Sullivan, Koch & Schulz, L.L.P., New York City, for Intelligence Press.

Matthew A. Leish, Victor A. Kovner, Davis Wright Tremaine LLP, New York City, for McGraw-Hill Companies.

David J. Kennedy, U.S. Attorney's Office, New York City, for U.S.

Jay Kevin Musoff, Orrick, Herrington & Sutcliffe LLP, New York City, for Aquila Energy Marketing Corp.

## DECISION AND ORDER

MARRERO, District Judge.

This putative class action alleges that a number of energy companies (collectively, "Defendants") engaged in a massive and coordinated manipulation of the natural gas futures market. Specifically, named class action Plaintiffs Cornerstone Propane Partners, LP ("Cornerstone"), Dominick Viola ("Viola"), and Roberto Calle Gracey ("Gracey"), (collectively, "Plaintiffs") allege that Defendants reported false gas prices to several industry publications in an effort to manipulate the prices of natural gas futures contracts traded on the New York Mercantile Exchange ("NYMEX"). Plaintiffs' allegations are detailed more fully in the Court's prior opinion in this action, *In re Natural Gas Commodity Litig.*, 337 F.Supp.2d 498 (S.D.N.Y.2004) (*"Natural Gas I"*).

Plaintiffs now move, pursuant to Fed. R.Civ.P. 23, to certify a class of "[a]ll persons, other than Defendants and their employees, affiliates and subsidiaries (whether or not named in this complaint), who purchased and/or sold NYMEX natural gas futures between January 1, 2000 and December 31, 2002, and who suffered losses by reason of Defendants' manipulation."

For the reasons discussed below, Plaintiffs' proposed class definition is modified to delete the final clause of the definition, but the motion is otherwise granted. The Court finds persuasive, indeed controlling, the reasoning in another case from this District involving alleged manipulation of commodities prices, *In re Sumitomo Copper Litigation.* In that case, Judge Pollack issued two opinions granting class certification to purchasers of copper futures on a division of NYMEX, *In re Sumitomo Copper Litig.*, 182 F.R.D. 85 (S.D.N.Y.1998) (*"Sumitomo I"*), and *In re Sumitomo Copper Litig.*, 194 F.R.D. 480 (S.D.N.Y.2000) (*"Sumitomo II"*), over objections that are very similar to the ones mounted by Defendants in this case. Judge Pollack's reasoning in those cases was explicitly endorsed by the Second Circuit in an opinion denying leave to appeal the class certification granted in *Sumitomo II. See In re Sumitomo Copper Litig.*, 262 F.3d 134 (2d Cir.2001) (*"Sumitomo III"*).

For the reasons set out below, this court finds that the proposed class, modified as indicated, satisfies all of the requirements of Rule 23(a) and the pertinent requirements of Rule 23(b) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

Plaintiffs commenced this action after the Federal Energy Regulatory Commission ("FERC") issued reports detailing false reporting of natural gas prices by Defendants and other entities. The Commodity Futures Trading Commission ("CFTC") later conducted investigations into Defendants' false reporting activities that resulted in multi-million dollar settlements with the CFTC by Defendants, among others. While Defendants did not admit liability in the context of those settlements, the CFTC orders approving the settlements detailed voluminous evidence collected by the Commission indicating that Defendants and others had engaged in efforts to manipulate the market for natural gas.

Plaintiffs' suit alleges that Defendants employed a variety of methods to manipulate, and/or aid and abet the manipulation of, the natural gas contract prices registered in the centralized NYMEX market to artificial levels, in violation of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 et seq. First, Plaintiffs contend that Defendants' false price reporting to industry publications that are allegedly relied upon by NYMEX traders to set natural gas futures prices caused those futures prices to become distorted. Second, Plaintiffs assert that Defendants engaged in wash sales, churning, and other manipulative conduct in order to distort prices in the NYMEX natural gas futures market, among other markets.

Plaintiffs have now moved to certify as a class all investors who purchased or sold NYMEX natural gas futures, other than those connected with Defendants, between January 1, 2000 and December 31, 2002, and who were damaged by Defendants' allegedly manipulative activities.

## II. DISCUSSION

### A. STANDARD OF REVIEW

■ To certify their proposed class, Plaintiffs must satisfy all four of the requirements of Fed.R.Civ.P. 23(a), as well as the requirements of Fed.R.Civ.P. 23(b)(3). See In re Livent Noteholders Sec. Litig., 210 F.R.D. 512, 514 (S.D.N.Y.2002) ("Livent").

To meet Rule 23(a)'s prerequisites, Plaintiffs must demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) further requires Plaintiffs to demonstrate that:

[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3).

■ Trial courts are given substantial discretion in determining whether to grant class certification, such latitude reflecting that "the district court is often in the best position to assess the propriety of the class and has the ability, pursuant to Rule 23(c)(4)(B), to alter or modify the class, create subclasses, and decertify the class whenever warranted." Sumitomo III, 262 F.3d at 139 (citing, inter alia, Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir.1993)). The Second Circuit has directed courts to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to private parties and, in cases such as this one involving alleged manipulation of public markets, benefits to the public provided by class actions. See Sumitomo I, 182 F.R.D. at 89; Sumitomo II, 194 F.R.D. at 481. As the Second Circuit stated in Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir.1968), "if there is to be an error made, let it be made in favor and not against the maintenance of the class action, for it is always subject to

modification should later developments during the course of the trial so require." (quoting *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968)).

## B. *RULE 23(A) REQUIREMENTS*

### 1. *Numerosity*

■■■■ To meet the requirements of Rule 23(a)(1), the class must be so large that joinder of all members would be impracticable. *See Sumitomo II*, 194 F.R.D. at 482 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir.1992)). It is clear from the record before the Court that there are likely thousands or even tens of thousands of potential members of the putative class; almost 400,000 natural gas futures contracts were open at the end of the proposed class period. *See* Declaration of Michael J. Harris, Ph.D., dated January 24, 2005, attached as Exhibit 1 of Affirmation of Craig L. Briskin in Support of Plaintiffs' Motion For Class Certification Pursuant to Fed.R.Civ.P. 23(b)(3), dated January 25, 2005 ("Harris Decl.") at 6. Even if the majority of these contracts were held by large traders, CFTC statistics indicate that there are almost two hundred of these large traders who hold natural gas positions on NYMEX. *See id.*

Defendants note, however, that it would be nearly impossible to identify a single person or entity who is necessarily a member of the class, at least under Plaintiffs' proposed class definition, at this stage of the litigation. The proposed definition consists of all investors (other than those affiliated with Defendants): (1) "who purchased and/or sold NYMEX natural gas futures between January 1, 2000 and December 31, 2002"; and (2) "who suffered losses by reason of defendants' manipulation." While determining whether a person satisfies the first condition is a straightforward proposition, which requires only access to the trading records of NYMEX, determining whether an individual satisfies the second condition is far more complicated. Plaintiffs are not seeking to include in the class all purchasers who lost money through trading of natural gas futures on NYMEX between 2000 and 2002; if they were, then at minimum proposed lead plaintiff Viola, who acknowledges that he earned money from trading NYMEX natural gas futures during the proposed class period, would be ineligible to serve as a class member. Instead, they seek to show that class members were harmed— either by losing money, *or* by earning less money than they otherwise would have made—as a result of the market manipulation alleged by Plaintiffs' complaint.[1]

---

**1.** This case is thus distinguishable from many of the cases cited by Plaintiffs in which courts have granted motions for class certification that included different manifestations of the qualifier "and were damaged thereby." (*See* Plaintiffs' Reply Memorandum in Further Support of Class Certification, dated May 13, 2005, Appendix A (collecting cases)). In cases such as *In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 102 (S.D.N.Y.2004) (*"IPO Offering"*), the court certified as a class all investors who purchased a specific security during the specified class period "and were damaged thereby." It is readily ascertainable from an examination of a potential class member's trading records of that specific security whether that investor suffered damages, *i.e.*, a financial loss, as a result of purchasing that security. The only issue for trial in that case was whether and to what extent the defendants should be held liable for those financial losses, an issue that would not affect whether a purchaser of the security qualified for membership in the class. *See also, e.g., In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 274–75 (S.D.N.Y.2003) (certifying as a class "all persons or entities who purchased or otherwise acquired publicly traded

securities of WorldCom ... and who were injured thereby.").

In this case, by contrast, Plaintiffs seek to prove manipulation of an entire futures market. That alleged manipulation produced pricing distortions, the nature of which have not yet been ascertained by Plaintiffs. It is thus possible that an individual who earned substantial profits through NYMEX natural gas futures trading activities was nonetheless damaged by the scheme alleged by Plaintiffs' complaint by inducing gas futures to trade at prices that, at the time of the individual's purchase, were higher than they otherwise would have been absent manipulation, or by *inducing such futures to trade at prices that at the time of the individual's sale were lower than they otherwise would have been absent manipulation.* Potential members of the proposed class in this case could not determine whether Plaintiffs' proffered class definition was satisfied with respect to them without proof of the effects that Defendants' manipulative conduct had on the market on each day of the class period on which those potential members purchased or sold natural gas futures on NYMEX.

The Court concludes that it would be nearly impossible to determine who satisfies this second condition of class membership without impermissibly inquiring into the merits of Plaintiffs' complaint. *See Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D.Pa. 1995) (denying certification because "the proposed class definition flies directly in the face of a basic tenet of class certification: a court may not inquire into the merits of the case at the class certification stage.").

All of these problems are avoided, however, when the final clause of Plaintiffs' proposed class description is removed, such that the class would be defined as follows: "All persons, other than defendants and their employees, affiliates and subsidiaries (whether or not named in this complaint), who purchased and/or sold NYMEX natural gas futures between January 1, 2000 and December 31, 2002." While the revised class designation makes no explicit mention of damages, the definition is analogous to the ones approved of by the *Sumitomo* line of cases addressing analogous wrongdoing on commodity exchanges. *See Sumitomo I*, 182 F.R.D. at 88 (defining proposed class as "[a]ll persons who purchased Comex copper futures contracts between June 24, 1994 and June 15, 1996, inclusive," except for those affiliated with defendants in that action). Class membership based upon this definition is readily ascertainable. If the size of the proposed class proves to be impractical or unmanageable, or if those who have been damaged by the alleged manipulation may be readily ascertained at a later point in the proceeding, the definition may be modified by the Court.

The Court will therefore *sua sponte* modify the proposed class definition as stated herein. In the remainder of this decision, any references to the proposed class will be a reference to the class definition as modified by the Court.

### 2. Commonality and Predominance of Common Issues

#### a. Common Questions Predominate

■ Rule 23(a)(2) requires a showing that common issues of law or fact affect all class members. This "common question" requirement has been characterized as a "low hurdle." *See Sumitomo II* at 482 (citing *In re Prudential Sec. Litig.*, 163 F.R.D. 200, 206 n. 8 (S.D.N.Y.1995)). Another provision of Rule 23, Rule 23(b)(3), requires that common questions of law and fact predominate over individual questions. Courts often consider the requirements of Rule 23(a)(2) in conjunction with Rule 23(b)(3). *See Sumitomo I*, 182 F.R.D. at 89.

■ It is evident that common questions of law and fact exist and predominate over individual questions in this proceeding. First, the claims of all class members arise from a common course of conduct by the Defendants. *Id.* at 92; *see also Green v. Wolf*, 406 F.2d 291, 299–301 (2d Cir.1968). Second, all class members will have to engage in the same detailed discovery to compile a common body of data, and all class members will have to engage in the same analysis of the data to establish the factual basis for each of the elements of a manipulation claim under the CEA. These elements are: (1) the defendant possessed an ability to influence market prices; (2) an artificial price existed; (3) the defendant caused the artificial price; and (4) the defendant specifically intended to cause the artificial price. *See id.* (citing *In re Soybean Futures Litig.*, 892 F.Supp. 1025, 1045 (N.D.Ill.1995)); *Grossman v. Citrus Assocs. of the N.Y. Cotton Exch., Inc.*, 706 F.Supp. 221, 231 (S.D.N.Y. 1989) [2] To establish liability, all class members must demonstrate price artificiality of NYMEX futures contracts prices during the class period and must demonstrate that Defendants' conduct caused the artificiality. The requirement of predominance is met

---

**2.** As noted in *Natural Gas I*, there is some disagreement among courts regarding the exact elements of a manipulation claim under the CEA. 337 F.Supp.2d at 507. While many courts have adopted the elements listed above, others have specified the elements as (1) manipulative conduct; (2) a specific intent to create an artificial price; (3) a causal relationship between the defendant's manipulative conduct and the resulting price; and (4) an artificial price. *See id.* (citing *Transnor (Bermuda) Ltd. v. BP North America Petroleum*, 738 F.Supp. 1472, 1483 (S.D.N.Y. 1990)).

where, as here, there is a showing of predominance of common questions at the liability stage of the litigation, rather than at the damages stage. *See Sumitomo I*, 182 F.R.D. at 91 (citing *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)).

### b. *Plaintiff's Proposed Methodology Meets the Requirements of Rule 23(a)*

■ Defendants argue that class certification should be denied because (1) the Plaintiffs have not described with sufficient specificity a methodology that Plaintiffs will employ to establish Defendants' liability, and (2) the methodology that Plaintiffs have described is so "fatally flawed" that class certification should be denied. Defendants argue that the proposed methodology is so deficient because: (1) it fails to account for a necessary factor, the relationship between *actual* natural gas spot[3] prices, as opposed to *published* natural gas spot prices, and the NYMEX futures contracts prices, and (2) the proposed methodology is allegedly insufficient as a method for establishing causality, a required element of Plaintiffs' manipulation claim. Defs.' Mem. at 43.

■ District courts must apply a "rigorous analysis" to determine whether plaintiffs have made a showing that the requirements of Rule 23 have been satisfied. *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). However, courts have disagreed regarding the standard they should apply in making that determination. *See IPO Offering*, 227 F.R.D. at 90–93.

The Supreme Court cautioned in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), that district courts do not have the authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it

may be maintained as a class action. Some courts have understood *Eisen* to require that the district court assume that the allegations contained in the complaint are true and draw all reasonable inferences in plaintiffs' favor, while other courts have rejected this reading of *Eisen* and instead consider evidence beyond the allegations set out in the complaint. *See IPO Offering*, 227 F.R.D. at 90–93. In addressing this division, the *IPO Offering* court took the view that the latter approach better reflects the guidance provided by *Falcon*. *See id.* In *Falcon*, the Supreme Court counseled that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." 457 U.S. at 160, 102 S.Ct. 2364. While the Supreme Court has not explicitly specified the standard a district court should apply to determine the sufficiency of plaintiffs' showing in support of a class certification motion, *see IPO Offering*, 227 F.R.D. at 91, the Second Circuit has provided some guidance on the issue. The Circuit Court has cautioned district courts against considering the merits of the claims at the class certification stage and has indicated that the plaintiff is only required to make "some showing" beyond the complaint in support of class certification. *Caridad v. Metro–North Commuter Railroad*, 191 F.3d 283, 292 (2d Cir.1999); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 134–135 (2d Cir.2001); *see also DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468, 470 (S.D.N.Y. 2005).[4]

In keeping with the Second Circuit's guidance, the Court finds that Plaintiffs have made a sufficient showing that their proposed methodology meets the requirements of Rule 23(a) and (b)(3). Plaintiffs describe the proposed methodology in the Declarations and Reply Declarations of Michael J. Harris, Mark Dwyer, and Franklin R. Ed-

---

3. "Spot" prices refer to physical transactions for delivery of natural gas within one month or less. *See* Defendants' Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, dated April 8, 2005, ("Defs.' Mem.") at 8.

4. The Second Circuit's approach differs from the approach of the Seventh and Fourth Circuits,

where cases have implied that district courts should apply a more stringent standard. *See, e.g., Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir.2001); *Gariety v. Grant Thornton LLP*, 368 F.3d 356 (4th Cir.2004); *see also DeMarco*, 228 F.R.D. at 470.

wards.[5] The declarations describe the several steps necessary to establish the elements of Plaintiffs' manipulation claim. Plaintiffs would first employ regression analysis, specifically, a "vector autoregressive" model ("VAR"), to demonstrate and quantify the interaction between the natural gas spot prices published in industry publications and NYMEX futures contract prices. *See* Dwyer Decl. at 13. Plaintiffs would then determine the natural gas spot prices that would have been published in the industry publications absent Defendants' alleged misconduct. Plaintiffs explain that this determination could be made either by simply removing all the misreported prices from the published price data, or by using regression analysis to determine what the "but for" prices would have been absent the Defendants' alleged misconduct. Combining the two first steps, Plaintiffs would then calculate the NYMEX prices that would have occurred had Defendants not engaged in misreporting spot transactions. *See* Dwyer Reply Decl. at 2–3. Plaintiffs assert that their methodology is well-grounded in relevant academic literature and that similar methodology has been employed in similar litigation, including the *Sumitomo* litigation. *See* Edwards Reply Decl. at 4, 9.

▉ Defendants' allegation that the proposed methodology is fatally flawed so as to preclude class certification must be rejected. As noted above, the Court's evaluation of the sufficiency of a proposed methodology at the class certification stage is limited to consideration of whether the methodology establishes that there are common questions of law and fact and whether the methodology "is not so flawed that it would be inadmissible as a matter of law." *Visa Check/MasterMoney*, 280 F.3d at 135; *Sumitomo III*, 262 F.3d at 141 (affirming that plaintiffs were not required to demonstrate "at the moment of certification" that price artificiality could be proved at trial); *Caridad*, 191 F.3d at 291–93 (holding that plaintiffs' possible difficulty in actually proving claims at trial does not defeat class commonality for certification purposes). At the class certification stage, the court "should not delve into the merits of an expert's opinion, or indulge in 'dueling' between opposing experts." *In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 76 (E.D.N.Y.2000); *see also Caridad*, 191 F.3d at 292; *In re Industrial Diamonds Antitrust Litig.*, 167 F.R.D. 374, 384 (S.D.N.Y.1996). In the context of the limited inquiry that is permissible at the class certification stage of the litigation, the Plaintiffs' description of proposed methodology is adequate to meet the requirements of Rule 23, and the methodology described is not "so flawed" as to render it inadmissible as a matter of law. *Visa Check/MasterMoney*, 280 F.3d at 135.

Defendants argue that the Plaintiffs' methodology is fatally flawed because it does not incorporate the actual, as opposed to the published, natural gas spot prices as a variable in the analysis of artificiality of NYMEX contracts prices. Plaintiffs counter that it is not appropriate to incorporate the actual natural gas spot prices because the actual spot prices are not generally available to the NYMEX futures traders in any format other than through listings in industry publications, and that the actual spot prices therefore do not influence NYMEX traders and do not affect the NYMEX futures contract prices. The Court cannot rule as to the merits of the parties' positions in this debate. However, the Court finds that the expert testimony provided by the Plaintiffs is sufficient to meet the low hurdle of making some showing that the proposed methodology is not "so flawed that it would be inadmissible as a matter of law." *Visa Check/MasterMoney*, 280 F.3d at 135.

### c. *Commonality is Not Undermined By Diversity Within the Class*

▉ Defendants argue that Plaintiffs do not meet the predominance requirement of

5. *See* Harris Decl.; Declaration of Mark Dwyer, Ph.D., dated January 24, 2005, attached as Exhibit 2 of Affirmation of Craig L. Briskin in Support of Plaintiffs' Motion For Class Certification Pursuant to Fed.R.Civ.P. 23(b)(3), dated January 25, 2005 ("Dwyer Decl.") and Reply Declarations of Franklin R. Edward, Michael J. Harris, Ph.D. and Mark Dwyer, Ph.D., In Support of Plaintiffs' Motion for Class Certification, dated May 9, 2005 ("Edward Reply Decl.", "Harris Reply Decl.", and "Dwyer Reply Decl.", respectively).

Rule 23(b)(3) because the proposed class contains investors in a diversity of positions with respect to the natural gas futures contract market, including purchasers and sellers, speculators and "hedgers".[6] Defendants argue that members of the proposed class have conflicting interests. For example, to establish damages, a seller would have an interest in showing that the Defendants' alleged misconduct caused the price of futures contracts to be artificially low on the day of the sale, while a class member who was a purchaser on the same day would have an interest in showing that the alleged misconduct of Defendants caused the price to be artificially high on that date. Defendants claim that class certification is inappropriate because these conflicting interests undermine both the predominance of common questions and the adequacy of the named Plaintiffs as class representatives. These objections are indistinguishable from objections rejected by the Second Circuit in *Sumitomo III*, 262 F.3d at 140–41; *see also In re Soybean Futures Litig.*, 892 F.Supp. 1025, 1031 n. 1 (N.D.Ill. 1995). On this authority, this Court similarly rejects Defendants' arguments.

In *Sumitomo I*, the court held that common questions prevailed despite the fact that the class included investors in a diversity of positions because all class members had a common interest in compiling the "objective, historical facts of the prices" and in the "largely mathematical enterprise of establishing correlations between these positions and prices." 182 F.R.D. at 92. The *Sumitomo I* court explained that factual differences in the amount of damages; the date, size, or manner of purchase; the type of purchaser; the presence of both purchasers and sellers; and other such differences "will not defeat class action certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class." *Id.* at 92, (citing *Green v. Wolf*, 406 F.2d 291, 299–301 (2d Cir.1968)). Similarly, the predominance requirement is not undermined here because all class members have a shared interest in compiling the historical data required to demonstrate price artificiality and have the same interest in proving price artificiality. Furthermore, as in *Sumitomo I*, the Plaintiffs allege that the amount of price artificiality may be calculated by classwide methods. *See id.* at 97. Therefore, the differences in class member characteristics do not warrant denial of class certification.

Furthermore, the diversity of the class does not warrant denial of class certification because, as noted in *Sumitomo II*, the Court has the ability to modify the class and/or create subclasses at any time during the litigation. 194 F.R.D. at 483.

### 3. *Typicality*

▮ Rule 23(a)(3) requires that the plaintiffs' claims be typical of the class. Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. *See Sumitomo I*, 182 F.R.D. at 94.

▮ Defendants argue that the named Plaintiffs in this proceeding do not meet the Rule 23(a)(3) typicality requirement and are not adequate representatives of the putative class as required under Rule 23(a)(4) because (1) each of the named Plaintiffs "lacks credibility" and (2) unique defenses may be available against each of the named Plaintiffs. Specifically, Defendants argue that Viola, a NYMEX trader, is an inadequate representative of the class and lacks credibility because he was found to have committed 38 infractions of various NYMEX rules over approximately twelve years. The vast majority of the infractions were "floor recordkeeping" violations. Declaration of Robert Micheletto in Support of Defendants' Joint Opposition to Plaintiffs' Motion for Class Certification, dated April 8, 2005, Exhibit J. The most serious violation attributed to Viola, prearranged trading, was committed in March 2003, a date outside the class period. Defendants argue that Cornerstone's credibility as a

---

**6.** The term "speculator" refers to a trader who is hoping to profit from anticipated future price movements, while the term "hedger" refers to a trader who is using futures contracts purchases for the sole purpose of minimizing the monetary risk involved in the trader's other natural gas positions. *See* Edwards Reply Decl. at 7.

plaintiff is also lacking because Cornerstone was identified as a possible "wash trader" [7] by FERC. Defendants argue that Gracey also lacks credibility because Gracey was convicted of a tax crime in Spain.[8]

The Court rejects the Defendants' arguments that the named Plaintiffs are not adequate representatives of the class based on lack of credibility. None of the alleged misconduct attributed to the named Plaintiffs is directly related to the claims made in this proceeding or to any testimony provided in this proceeding. Courts have denied class certification based on the inadequacy of proposed named plaintiffs on grounds of serious credibility problems where misrepresentations were identified in testimony that was related to the proceeding. *See Kline v. Wolf,* 702 F.2d 400 (2nd Cir.1983). In *Kline,* for example, one plaintiff was refused class representative status because he testified in that proceeding that he relied upon a report which he later admitted did not exist at the time he said he relied upon it. The other plaintiff in that case refused to answer proper discovery questions and provided suspect testimony in relation to the proceeding. In contrast, there are no allegations here of misrepresentations in testimony related to this case.

■■■■ Defendants also argue that the named Plaintiffs are inadequate class representatives because unique defenses may be raised against each one of them based on alleged misconduct. However, the existence of a unique defense does not necessarily render a plaintiff inadequate to represent the class. In *Sumitomo I,* the court noted that "it is beyond reasonable dispute that a repre-

sentative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." 182 F.R.D. at 95 (citing *Langner v. Brown,* No. 95 Civ. 1981, 1996 WL 709757, *3 (S.D.N.Y. Dec. 10, 1996)). The determinative issue is whether the unique defense "threatens to become a central focus of the case." *Id.* Thus, the fact that Defendants may attack the Plaintiffs' credibility and/or employ an "unclean hands" defense at the damages stage of the litigation does not mean that any such defenses should overcome the common issues of fact and law in this proceeding. Furthermore, courts have found class representatives inadequate due to susceptibility to unique defenses where the defenses "attack the heart of the plaintiff's case". *Langner,* 1996 WL 709757 at *3. The adequacy and typicality concerns that Defendants raise, in contrast, are peripheral to the Plaintiffs' case and do not threaten to overshadow the common questions of law and fact.

■■■■ Finally, Defendants argue that the named Plaintiffs are inadequate class representatives because allegedly none of them testified to having relied upon the published spot price indices to determine the price at which they would buy or sell NYMEX futures contracts. Defendants argue that such reliance "is integral to plaintiffs' theory of the case" because Plaintiffs allege that the NYMEX prices were affected by false reporting to publications listing price indices. Defs. Mem. at 48. Defendants' argument is flawed, however, because no individual class member in this proceeding is required to

---

7. "Wash trading" is generally defined as "a prearranged set of trades of the same good between the same parties, involving no economic risk and no net change in beneficial ownership. These trades expose the parties to no monetary risk and serve no legitimate business purpose." Final Report on Price Manipulation in Western Markets, Fact–Finding Investigation of Electric and Natural Gas Prices, Docket No. PA02–2–00, Federal Energy Regulatory Comm'n, attached as Exhibit 5 of Affirmation of Craig L. Briskin in Support of Plaintiffs' Motion For Class Certification Pursuant to Fed.R.Civ.P. 23(b)(3), dated January 25, 2005.

8. The Defendants also argue that Gracey is not a qualified representative of the class because he is allegedly facing the possibility of incarceration based on his conviction for tax crimes in Spain. Gracey's appeal of his conviction is currently pending. Plaintiffs allege that even if Gracey's conviction is upheld on appeal, it is highly unlikely that Gracey will serve any jail time. In light of the Court's ability to modify the class or disqualify a class representative at a later stage of the litigation, the Court does not find the possibility of Gracey's incarceration a sufficient justification for denying class certification or deeming Gracey unqualified to serve as a class representative at this time.

show reliance on the published spot prices in order to establish the elements of their manipulation claim. *See Natural Gas I*, 337 F.Supp.2d at 507–08. To establish liability, Plaintiffs must demonstrate that the published spot prices influenced NYMEX futures contract prices during the class period, but Plaintiffs need not make any individual showing of reliance on the published spot prices. *See id.* Therefore, the Court rejects the Defendants' argument that the named Plaintiffs are inadequate class representatives.

### 4. *Adequacy*

 Rule 23(a)(4) requires that the representative of the parties will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To meet this requirement, the lead Plaintiffs' counsel must be "qualified, experienced, and generally able to conduct the proposed litigation," and the class representatives must not have interests conflicting with the class. *Livent*, 210 F.R.D. at 517. Both of these requirements are satisfied here.

It is undisputed that the attorneys for the Plaintiffs have adequately represented classes in antitrust, securities, and in other commodity futures class actions. Therefore, counsel for the Plaintiffs are qualified for the purposes of Rule 23(a)(4). Additionally, the named Plaintiffs' interests do not conflict with the interests of the putative class members. As noted above, the presence of both purchasers and sellers, other differences in members' characteristics, and the possibility of unique defenses in the damages stage of the litigation does not warrant denial of class action certification. *See Sumitomo I*, 182 F.R.D. at 92–93.

### 5. *Superiority*

 To meet the requirements of Rule 23(b)(3), a class action must be superior to other available methods for the adjudication of the controversy. It is evident that, in this proceeding, a class action is superior to other available methods. The putative class is likely to include thousands of members, and the high cost of the extensive discovery, compilation of a suitable database, and application of complex methodologies by experts, would be prohibitively costly for individual plaintiffs to shoulder alone. *See Livent*, 210 F.R.D. at 518.

Defendants argue that class certification should be denied because a class action would be virtually impossible to manage. Specifically, they contend that the diversity and size of the class and the complex calculations required to determine damages for each class member render the class unmanageable. The Court is not convinced that any unique manageability problems exist in this proceeding that distinguish the proposed class from the class certified in the *Sumitomo* litigation. Furthermore, any class action based on a manipulation claim or a similar theory necessarily involves large databases and complex calculations for determining individual class member damages. *See Sumitomo I*, 182 F.R.D. at 96. The Court notes that modification of the class and creation of subclasses is possible should that become necessary at a later phase of the trial, pursuant to Rule 23(c)(4)(B). *See Sumitomo III*, 262 F.3d at 139. Therefore, the Court is satisfied that concerns about manageability do not preclude class certification.

Finally, the Court finds that neither an evidentiary hearing nor oral argument is warranted on Plaintiffs' Motion for Class Certification. Defendants request an evidentiary hearing and oral argument on the grounds, among other reasons, that the Plaintiffs' methodology is fatally flawed. However, as noted above, the submissions of the parties are sufficient to demonstrate that the Plaintiffs' proposed methodology satisfies the requirements of Rule 23. The Court has already stressed that it is inappropriate for it to weigh conflicting expert evidence "or engage in 'statistical dueling' of experts" at the class certification stage. *Visa Check/Master-Money*, 280 F.3d at 135. The Defendants' other arguments in support of their request are without merit, as the objections they raise echo those rejected by the Second Circuit in the *Sumitomo* litigation. *See Sumitomo III*, 262 F.3d at 141.

## III. *ORDER*

For the reasons discussed above, it is hereby:

**ORDERED** that the motion of the Plaintiffs Cornerstone Propane Partners, LP, Dominick Viola, and Roberto Calle Gracey for class certification is granted as modified herein;

**ORDERED** that the request of the Defendants for an evidentiary hearing and oral argument on Plaintiffs' motion is denied.

**SO ORDERED.**